1  Kevin D. Rising (SBN 211663)
   *kevin.rising@btlaw.com*
2  Devin Stone (SBN 260326)
   *devin.stone@btlaw.com*
3  **BARNES & THORNBURG LLP**
   2029 Century Park East, Suite 300
4  Los Angeles, California  90067
   Telephone:   (310) 284-3880
5  Facsimile:   (310) 284-3894

6  Attorneys for Defendants
   DEFENDER SECURITY COMPANY d/b/a
7  PROTECT YOUR HOME and ADT, LLC,
   incorrectly identified as ADT, LLC d/b/a ADT
8  SECURITY SERVICES, INC.

9

10                 UNITED STATES DISTRICT COURT

11              SOUTHERN DISTRICT OF CALIFORNIA

12

13  JANET BOSTANI, on behalf of herself    Case No.  14-CV-0322 DMS BLM
14  and all other similarly situated,
                                           *[Assigned to: Hon. Dana M. Sabraw]*
15          Plaintiff,

16      vs.                                **DEFENDER SECURITY COMPANY'S
                                           THIRD PARTY COMPLAINT
17  ADT, LLC d/b/a ADT SECURITY            AGAINST PAYAM BOSTANI**
    SERVICES, INC. and DEFENDER
18  SECURITY COMPANY d/b/a
    DEFENDER DIRECT,  INC. and
19  PROTECT YOUR HOME;                     Complaint filed:        Feb. 22, 2014

20          Defendants.

21

22

23

24

25

26

27

28
                                           Case No.: 14-CV-0322 DMS BLM
   DEFENDER SECURITY COMPANY'S THIRD PARTY COMPLAINT AGAINST PAYAM BOSTANI

Third-Party Plaintiff Defender Security Company ("Defender"), states the following as its Third-Party Complaint against Third-Party Defendant Payam Bostani ("Mr. Bostani").

## PARTIES AND JURISDICTION

1.  Defender is a corporation organized and existing under the laws of the State of Indiana, with its principal place of business in the State of Indiana.

2.  Third-Party Defendant Payam Bostani is an individual residing in the state of California.

3.  Defender was named in this lawsuit in which Janet Bostani ("Plaintiff") seeks damages on behalf of herself and a class of individuals defined as:

> All persons within the United States who received any
> telephone call from Defendants and/or their agents to
> said person's cellular telephone made through the use of
> any automatic dialing system or with an artificial or
> prerecorded voice, from January 31, 2013 until class
> certification.

4.  Janet Bostani alleges claims for damages under the Telephone Consumer Protection Act, the Consumer Legal Remedies Act, and Unfair Competition Law (Cal. Bus. & Prof. Code § 17200).

5.  This Court has jurisdiction over this lawsuit, pursuant to 28 U.S.C. §1332 and the Class Action Fairness Act.

6.  Venue lies in this Court pursuant to U.S.C. §1391.

## FACTS COMMON TO ALL COUNTS

7.  In her complaint, Janet Bostani alleges that Defendants called her without her permission.

8.  Defendants have denied the material allegations of Plaintiff's Complaint.

9.  Defender is informed and believes that Mr. Bostani provided Janet Bostani's

phone number to Defender and represented that Defender had Mr. Bostani and Plaintiff's permission to call that phone number.

10. When Mr. Bostani contracted with Defendants for the provision of security services, he executed an "Alarm Services Contract."  A true and correct copy of the signature pages of that contract is attached hereto as Exhibit A.  Portions of that contract are redacted to preserve the privacy of Mr. Bostani's personal information.  Attached as Exhibit B is a true and correct copy of the full contract on which Exhibit A is based which contains all of the terms of the Alarm Services Contract.  Together, Exhibits A and B will be referred to as the "Alarm Services Contract."

11. In the Alarm Services Contract, Mr. Bostani agreed to section 5.E entitled "INDEMNITY" which provides:

> IF ANY OTHER PERSON, INCLUDING MY
> SUBROGATING INSURER, MAKES ANY CLAIM OR
> FILES ANY LAWSUIT AGAINST DEALER IN ANY WAY
> RELATED TO THE EQUIPMENT OR SERVICES
> PROVIDED BY DEALER TO ME, I AGREE TO
> INDEMNIFY, DEFEND AND HOLD DEALER HARMLESS
> FROM ANY AND ALL SUCH CLAIMS AND LAWSUITS,
> INCLUDING THE PAYMENT OF ALL DAMAGES,
> EXPENSES , COSTS, AND ATTORNEY FEES.  MY DUTY
> TO DEFEND IS SEPARATE AND DISTINCT FROM MY
> DUTY TO INDEMNIFY AND HOLD HARMLESS AND
> ARISES UPON THE ASSERTION OF A CLAIM OR
> DEMAND AGAINST DEALER REGARDLESS OF
> WHETHER DEALER HAS BEEN FOUND LIABLE OR
> WHETHER DEALER HAS INCURRED ANY EXPENSE.

12.  Furthermore, in the Alarm Services Contract, Mr. Bostani agreed that his

representations to Defender were true and accurate:

> I confirm that the personal information about Me and third
> parties that I provided to Dealer is true and complete and that I
> shall notify Dealer without delay in writing of any change to
> this information.   I consent to the Dealer's use of my personal
> information and that of third parties that I provided to Dealer
> for the purpose of monitoring, setting up and administering my
> security services (including credit approval, invoicing,
> collection and to provide Me with information on new services
> or equipment).  I have obtained the consent of, or hereby
> consent to, the third parties whose personal information I
> provided to Dealer to use such personal information for the
> administration of my account with Dealer and as provided in
> this Contract.  I consent and agree that Dealer may collect
> (including this consent to record my telephone conversations
> with Dealer's representatives), use, disclose and transfer my
> personal information and that of third parties provided by Me to
> Dealer, Dealer's parents, affiliates, subsidiaries, successor
> entities, subcontractors or assignees of this Contract or any
> applicable authority having jurisdiction that requests such
> information to administer alarm monitoring services or alarm
> system license, permit or similar programs.

Alarm Services Contract, Section 22.

13.  Mr. Bostani has refused Defender's tender of defense.

## COUNT I

(Express Indemnity)

14.     Defender incorporates by reference the allegations contained in Paragraphs 1 through 13 of its Third-Party Complaint.

15.     Defender denies that it was in any way responsible for the alleged acts contained in the Complaint.

16.     Mr. Bostani executed the Alarm Services Contract, attached hereto as Exhibit A.

17.     The Alarm Services Contract contains an express indemnity, hold harmless, and attorneys' fees provision in favor of Defender that encompasses the complained-of acts in the Complaint.

18.     Without admitting any of Plaintiff's allegations in the Complaint, if Defender is found liable for any act contained therein, Defender will be entitled to indemnification, in whole, from Mr. Bostani for any recovery by Plaintiff, by way of settlement or judgment including any attorneys' fees incurred in defending suit.

19.     Defender has incurred costs, expenses, and attorneys' fees in defending this suit to date and anticipates additional costs, expenses, and attorneys' fees necessarily will be incurred in the future as a result of Mr. Bostani's actions.

## COUNT II

(Implied Indemnity)

20.     Defender incorporates by reference the allegations contained in Paragraphs 1 through 19 of its Third-Party Complaint.

21.      Without admitting any of Plaintiff's allegations in the Complaint, if Defender is liable to Plaintiff and/or the putative class for damages, then such damage was primarily and ultimately caused by Payam Bostani and Defender is entitled to indemnification in full by Payam Bostani.

## COUNT III

4

(Contribution)

22.     Defender incorporates by reference the allegations contained in Paragraphs 1 through 21 of its Third-Party Complaint.

23.     To the extent that Defender is liable to Plaintiff and/or the putative class, and Defender is entitled to contribution from Payam Bostani for his involvement in causing such damages.

WHEREFORE, Defendant/Third-Party Plaintiff Defender requests that if a judgment is entered in favor of Plaintiff, then the Court enter judgment in favor of Defender and against Third-Party Defendant Payam Bostani, for all claims raised and for pre-judgment interest, attorneys' fees, costs of suit incurred herein, and all other just and appropriate relief.

## JURY DEMAND

Defender demands trial by jury on all claims raised in its Third-Party Complaint.

Dated:  July 7, 2014               **BARNES & THORNBURG LLP**

By_____*/s/Kevin D. Rising*_____
                           KEVIN D. RISING
                    Attorneys for Defendant DEFENDER
                           SECURITY COMPANY

# EXHIBIT "A"

**REDACTED**



ADT AUTHORIZED DEALER

PRINT CLEARLY IN CAPITAL LETTERS (USE BLACK INK ONLY)

`1 2 3` `A B C`

The ADT Authorized Dealer Program is an ADT LLC dba ADT Security Services ("ADT") approved Program of Independent ADT Authorized Dealers. Please refer any questions concerning the Program or the Dealer to ADT at 800-539-9690.

○ Commercial   ⊙ Residential

Protect Your Home
6140606

`4 3 8 5 5 0 4 5 7 9`
Monitoring Account Number

**ALARM SERVICES CONTRACT (CA ONLY)**   Dealer's License No: `A C 0 6 3 2 0`

ADT Authorized Dealer Name and Address
**Protect Your Home**
1025 W. 190th St. Ste 22
Gardena, Ca. 90248

As used in this Contract, all references to "Authorized Dealer" shall include Authorized Dealer and its employees, agents, representatives, independent contractors, attorneys, officers, directors and shareholders, whether or not referenced in a particular Section of this Contract. The words "I" "Me" and "Customer" as used in this Contract shall have the same meaning.

IF FAMILIARIZATION PERIOD IS REJECTED INITIAL HERE ___

THIS CONTRACT is made and entered into this date, `12/15/2012`, by and between
Customer Name `BOSTANI` Name `PAYAM` first Name
Business Name
Located at `1233 MONTANA Ave Address`
`LOS ANGELES` `CA` `90049` Code
Monitored Location
Telephone ███████████ No. `2`

Email Address: ___

(the "Monitored Location"), Authorized Dealer set forth above, whose corporate offices are located at the Address set forth above. Authorized Dealer agrees to sell and install the security alarm system (the "Equipment") at the Monitored Location and to provide Monitoring Services and Limited and Extended Limited Warranty Services (collectively, the "Services"). I agree to pay Authorized Dealer, or if ADT accepts this Contract, ADT for Services to be provided in the amounts summarized in this contract, the Emergency Information Schedule and the Schedule of Protection, upon and subject to the terms and conditions of this Contract.

**Communications Authorization:** I hereby authorize Authorized Dealer, its assignee, or affiliates to furnish information and/or updates regarding my security system and/or third party products and services available to me to the contact information provided by me. I may unsubscribe or opt-out by emailing donotcontact@adt.com or by calling 888-DNC4ADT (888-362-4238). Initial here ___

**Basic Monthly Service, Burglary** $ ___
Service includes: Customer Monitoring Center Signal Receiving and Notification Service for Burglary, Manual Fire, and Manual Police Emergency.

**Basic Monthly Service, Burglary with Extended Limited Warranty (Residential Customer Only)** $ ___
Service includes: Customer Monitoring Center Signal Receiving and Notification Service for Burglary, Manual Fire, and Manual Police Emergency along with Extended Limited Warranty during which I will be billed $25 for each trip made to the Monitored Location after the Limited Warranty period.  P.B.

BILLING FREQUENCY FOR ALL CHARGES: ☑ Monthly ○ Quarterly ○ Semi-Annually ○ Annually   P.B.

AUTO PAYMENT INFO: ○ Checking Account ○ Savings Account ⊙ Debit/Credit Card ○ Other   AFFINITY NAME `DM`

See Attached Schedule of Protection, If Applicable, for Terms and Conditions of Purchase $ `99.00` Purchase Amount Total (Proof of payment required)
2 year  P.B.

Optional Electronic Monitoring Services:

| | Monthly Rate: |
|---|---|
| ○ Remote Access/Keyfob | $ |
| ○ Fire Alarm/Smoke Detection | $ |
| ○ Carbon Monoxide | $ |
| ○ Two Way Voice | $ |
| ○ Cellguard Backup | $ |
| ○ Investigator Response | $ |
| ○ MPF | $ |
| ⊗ Other `Pan 2A` | $ `44.99` P.B. |
| Total Monthly Service Charge | $ `44.99` |
| Total Initial 2 year Term Service Charge | $ `1079.76` |

**TERM OF CONTRACT:** The initial term of this Contract is for three (3) years and there is a 75% early contract termination charge. The alarm monitoring and notification services will begin when (A) the equipment is installed and is operational and (B) the necessary communications connection is completed and verified by Authorized Dealer. If this is a "Residential" Contract, this Contract will automatically renew for successive thirty (30)-day term(s) unless terminated by either party's written notice at least thirty (30) days before the end of the then-current term. If this is a "Commercial" Contract, this Contract will automatically renew for successive one (1)-year term(s) unless terminated by either party's written notice at least thirty (30) days before the end of the then-current term.

**Notice to Consumers:** Authorized Dealer is an independent ADT dealer. I agree that no agency, employer/employee or fiduciary relationship exists between ADT and Authorized Dealer and that Authorized Dealer is not controlled by ADT. After I sign this Contract, it will be submitted to ADT for acceptance and, if accepted, this Contract will be between ADT and Me. If ADT accepts this Contract, then ADT's responsibility to Me begins on the effective date of this Contract. I expressly authorize submission of this Contract for acceptance by ADT. I acknowledge that ADT reserves the right to reject this Contract, in which case ADT shall have no responsibility to Me. If this Contract is not accepted by ADT, ADT or Authorized Dealer may notify Me of that decision.

I acknowledge that: (A) Dealer has explained additional protection, equipment, and services available to Me, (B) additional protection over and above that provided in this Contract is available and may be obtained from Dealer at an additional cost to Me, (C) I desire and have contracted only for the Equipment and Services itemized on this Contract, and (D) the Equipment will become my property upon payment of the Purchase Amount Total including Sales Tax.

This Contract requires written approval by an Authorized Representative of Dealer. Without such written approval, Dealer's only liability shall be to refund any amount Customer paid Dealer upon signing this Contract. This contract requires acceptance by ADT in order to create a contractual relationship between ADT and Me, the Customer. ADT shall have no responsibility for monitoring services until all permits required by law are received and in effect. From this sentence to the end of this Contract, including the terms and conditions attached to this contract, and regardless of whether ADT has accepted this Contract, each reference to the word "Dealer" shall also include Authorized Dealer, ADT and its assignee and their respective employees, agents, representatives, independent contractors, attorneys, officers, directors and shareholders.

**FINANCIAL DISCLOSURE STATEMENT**
THERE IS NO FINANCE CHARGE OR COST OF CREDIT (0% APR) ASSOCIATED WITH THIS CONTRACT.

A. NUMBER OF PAYMENTS FOR THE INITIAL TERM IS 36.   B. AMOUNT OF EACH PAYMENT IS $ `44.99` (TOTAL MONTHLY SERVICE CHARGE ABOVE).   TOTAL OF PAYMENTS FOR THE INITIAL TERM IS $ `1079.76` (A. TIMES B.) EXCLUSIVE OF ANY APPLICABLE TAXES, FEES, FINES AND RATE INCREASES.)

LATE CHARGE - PAYMENT IS DUE PURSUANT TO MY SELECTED BILLING FREQUENCY PRIOR TO THE START OF SERVICE. MY FIRST BILL/CHARGE WILL BE SENT/MADE SHORTLY AFTER MY SERVICE BEGINS. ADT MAY IMPOSE A ONE-TIME LATE CHARGE ON EACH PAYMENT THAT IS MORE THAN TEN (10) DAYS PAST DUE, UP TO THE MAXIMUM AMOUNT PERMITTED BY LAW, BUT IN NO EVENT WILL THIS AMOUNT EXCEED $5.00.

PREPAYMENT – IF I PREPAY THE TOTAL OF PAYMENTS PRIOR TO THE END OF THE INITIAL TERM OF THIS CONTRACT, THERE IS NO PENALTY OR REFUND.

SEE PARAGRAPHS 2, 3, 15 AND 19 OF THIS CONTRACT FOR ADDITIONAL INFORMATION ABOUT NONPAYMENT, DEFAULT, ACCELERATION AND RATE INCREASES.

**CANCELLATION RIGHT (Residential Customer only)**
I, THE CUSTOMER, MAY CANCEL THIS TRANSACTION AT ANY TIME PRIOR TO MIDNIGHT OF THE THIRD BUSINESS DAY AFTER THE DATE OF THIS TRANSACTION. SEE THE ATTACHED NOTICE OF CANCELLATION FORM FOR AN EXPLANATION OF THIS RIGHT. Customer acknowledges being verbally informed of Customer's right to cancel at the time of execution of this Contract and receipt of this Notice.   INITIAL ___

Accepted By: _Kenneth Wright_   (40) ___
Sales Representative Signature

Accepted By: _J Cohen_   `12/15/2012`
Authorized Representative of Dealer

Accepted and Copy Received by: `12/15/2012`
`BOSTANI`   _signature_
Customer's Signature

`PAYAM`
`12/15/2012`

Customer's Signature

**REDACTED**

## Emergency Information Schedule
### (All Applicable Information is Required)

ADT AUTHORIZED DEALER

PRINT CLEARLY IN CAPITAL LETTERS
1 2 3 A B C

Account Type: ☑ Install ☐ Takeover
☐ System Move

Monitor Account Number: U 3 8 5 5 0 4 5 7 9
☐ Commercial ☑ Residential ☐ Dealer ☐ Contract Monitor

Equipment Type: IMPASA

Confirmation Code: 00C72C74

Protect Your Home
6140606

Customer's Name:
Last Name: BOSTANI
First Name: PAYAM
MI:
SSN:

Business Name:
Affinity Name: DM

Site Address: 11233 MONTANA AVE
Beacon Score: 738
Prewire: ☐ Yes ☐ No

City/Township: LOS ANGELES
County/Borough: Los Angeles
State: CA Zip Code: 90049

Map Page: Cross Street:
Time Zone: ☐ E ☐ C ☐ M ☑ P

Billing Address:
Attention (Comm. Only):

City:
State: Zip Code:

---

### REQUIRED - EMERGENCY INFORMATION

Permit Number:

| | | | |
|---|---|---|---|
| Police Department Name: Los Angeles | Phone Number: ▓▓▓ | Fire Department Name: Los Angeles | Phone Number: ▓▓▓ |
| Medical/Ambulance Name: Los Angeles | Phone Number: ▓▓▓ | Guard/Patrol Name: | Phone Number: |

MONITORED LOCATION TELEPHONE
Number 1: 3106899315   Number 2:

A Personal Identification Code (PIC) must be issued to all users of the alarm including all people listed in the Key Holder section. A PIC must be no more than 10 characters in length, and may not contain any punctuation or spaces, offensive language, or non-standard spelling.

PIC DEFENSE

### REQUIRED - KEY HOLDER/RESPONSIBLE PARTIES

In the event of an alarm, list in order of preference those individuals who should be called. Those listed may need to meet the authorities in response to an alarm signal, so they need to have access to the monitored location, a Personal Identification Code (PIC), and a code to turn the alarm system on and off. Check the Yes box under Emergency Call Verification (ECV) to indicate which individuals should be called prior to notification of authorities. At least one individual must be selected. These individuals are authorized by you to CANCEL the alarm. These individuals must be issued the PIC established on the account.

| | Last Name: | First Name: | ECV | Phone Number: | |
|---|---|---|---|---|---|
| 1 | BOSTANI | PAYAM | ☑ Yes ☐ No | ▓▓▓ | ☐ Home ☑ Mobile/Cell ☐ Work |
| 2 | BOSTANI | BETTY | ☐ Yes ☐ No | ▓▓▓ | ☐ Home ☑ Mobile/Cell ☐ Work |
| 3 | | | ☐ Yes ☐ No | | ☐ Home ☐ Mobile/Cell ☐ Work |
| 4 | | | ☐ Yes ☐ No | | ☐ Home ☐ Mobile/Cell ☐ Work |
| 5 | | | ☐ Yes ☐ No | | ☐ Home ☐ Mobile/Cell ☐ Work |

### Services

| Service | MONTHLY RATE | Service | MONTHLY RATE | | |
|---|---|---|---|---|---|
| ☐ Basic Burglary Service | $ | ☐ DSC Sky Route | $ | BILLING FREQUENCY: FOR ALL CHARGES | PURCHASE AMOUNT TOTAL $ 9900 |
| ☐ Basic Burglary Service with Extended Limited Warranty with $25 Trip Fee (Residential Only) | $ | ☐ Alarm Net C Backup | $ | ☑ Monthly ☐ Quarterly | |
| ☐ Key Fob/Smoke/Carbon Monoxide | $ | ☐ Guard Response | $ | ☐ Semi-Annually ☐ Annually | TOTAL MONTHLY RATE |
| ☐ Two Way Voice | $ | ☑ Other Pulse 24 | $4499 | ☐ Other | $4499 PB |

### Electronic Payment Options

Name as it appears on your bank account or credit card: Payam Bostani

Name of Bank/Credit Union:

Credit/Debit Card Number: ▓▓▓

ABA Routing Number: ▓▓▓   Bank Account Number: ▓▓▓

Month   Year
Expiration Date: ▓▓▓

☐ Checking ☐ Savings   Preferred Payment Withdrawal Date (1st - 28th) 25

I authorize ADT Authorized Dealer, ADT LLC dba ADT Security Services, the financial institution or referenced credit card company named above to electronically debit my bank account or charge my credit card for all (i) Services Charges and (ii) Contract Termination Charges (see Paragraph 2 Early Termination of this Contract in the Terms and Conditions of the Alarm Services Contract). I have read and fully understand the terms and conditions as outlined on the back of this form.

Customer's Signature _____   Date 12/15/12   Email _____

Authorized Dealer Signature _____   Date 12/15/12   Rep. #

This document is incorporated into and made part of the Alarm Services Contract between Dealer and the Customer, the terms and conditions of which fully apply to this document. Customer is responsible for obtaining all alarm permits and providing permit information to ADT Authorized Dealer.

5884590256

F5005-08 (Rev. 06/12)

©2012 ADT LLC dba ADT Security Services. All rights reserved.

**ASSIGNEE COPY**

**ADT AUTHORIZED DEALER**

## SCHEDULE OF PROTECTION

The ADT Authorized Dealer Program is an ADT LLC dba ADT Security Services ("ADT") approved Program of independent ADT Authorized Dealers. Please refer any questions concerning the Program or Dealer to ADT at 800-539-9690.

Monitoring Account Number: U585 5 009599 REDACTED
Dealer Name: Protect Your Home
Dealer Number: 6140606

THIS CONTRACT is made and entered into this 15 day of Dec , 20 12 by and between Dealer ("We" "Us" or "Our") and Payam Bostani , ("You" or "Your"), 11233 Montana Ave Ca 90049 ("Monitored Location").
Street & Number, State, Zip Code          Home Telephone          Business Telephone

This Schedule of Protection is incorporated by reference into the Alarm Services Contract made this date between We, the Dealer and You, the terms and conditions of which fully apply to this Schedule of Protection.

☑ RESIDENTIAL     ☐ COMMERCIAL     ☐ WIRELESS     ☐ APARTMENT

| CODE | QUANTITY | DESCRIPTION | PRICE | EXTENDED PRICE |
|---|---|---|---|---|
| | | Base System ($850 Value) - SELECT ONLY ONE OF THE FOLLOWING: | | |
| | 1 | ☑ Impassa Base (1 Key, 2 D/W, 1 Motion) ☐ Impassa Takeover (1 Keyfob only) ☐ Power Series (1864 Panel, 1 Keypad, 1 Keyfob) | $ 99.00 | 199 |
| D019PS | 1 | P.S. (Choose one) ☐ WIRELESS DOOR/WINDOW ☑ KEY FOB ☐ MED PENDANT | $49 | 49 |
| D044SP | | ☐ SHOCK DETECTOR | $79 | |
| D054PK | | ☐ WIRELESS 2-WAY KEY CHAIN | $99 | |
| ITEMS SWAPPED | | Keychain Remote _____ Door/Window _____ Motion Detector | | |
| | | Additional Protection Devices | | |
| D143HTP | | Hardwire Touchpad (Power Series) | $199 ea. | |
| D192WKP | | Wireless 2-Way Keypad (Impassa) | $249 ea. | |
| D165CO | | Wireless Carbon Monoxide Detector | $229 ea. | |
| D049CB | 1 | Cellular Back-Up     TG-1     GS2055     GS3060     (circle one) | $149 ea. | 123 |
| D094DW | 1 | Wireless Door/Window Sensor _____ Doors _____ Windows | $129 ea. | 129 |
| D209OS | | Wireless Exterior Siren with Temp Sensor and Strobe | $289 ea. | |
| D122FD | | Wireless Flood Sensor | $169 ea. | |
| D158GB | 2 | Wireless Glass Break Detector | $219 ea. | 438 |
| D090KR | | Keychain Remote (w/Personal Panic) | $119 ea. | |
| D122KR-2 | | 2-Way Keychain Remote | $159 ea | |
| D108MP | | Emergency Pendant | $139 ea. | |
| D165MD | 4 | Wireless Motion Detector | $229 ea. | ~~229~~ |
| D122OH | | Wireless Overhead Garage Door Sensor | $159 ea. | |
| D190RK | | Repeater Kit | $219 ea. | |
| D103SD | | Wireless Shock Detector | $149 ea. | |
| D165SC | 1 | Wireless Smoke Communicator (Monitored Photo-Electric) | $229 ea. | 229 |
| D060PHC | | Premium Hardwire Glass Break, Motion, Smoke, Siren | $139 ea. | |
| D020HWC | | Hardwire Contact | $99 ea. | |
| D139IS | | Wireless Indoor Siren | $179 ea. | |
| D105TWV | | Power Series 2 Way Voice Module and Speaker, 2 Ports | $169 ea. | |
| D099CDV | | Vanishing Contact | $139 ea. | |
| | | Exception Items (Hardwire Contacts, Etc.) | | |
| D015SU | 4 | Wireless Shock Upgrade (requires trade-in of D/W) | $24 ea. | 96 |
| D025KU | | 2-Way Keychain Upgrade (requires trade-in of Standard Key Chain) | $40 ea. | |
| D005VCU | | Wireless Vanishing Contact Upgrade (requires trade-in of D/W) | $10 ea. | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

You acknowledge that: (a) We have explained the full range of protection, equipment, and services available to You, (b) additional protection over and above that provided herein is available and may be obtained from Us at an additional cost to you and (c) You desire and have contracted for only the equipment and services itemized on this Contract. We are not a security consultant.

| | | |
|---|---|---|
| DATE 12/15/12 | PURCHASER'S SIGNATURE | SUBTOTAL 1076.66 |
| INSTALLATION DATE GIVEN 12/15/12 | INSTALLATION TECHNICIAN NAME Ken wick Wright | 8.75 % TAX 94.70 |
| DEALER LICENSE NUMBER ACO6320 | SALES REPRESENTATIVE NAME Ronnie Wright | TOTAL |
| | | LESS DEPOSIT 141.66 |
| Ver 7.3.12 | ASSIGNEE COPY | BALANCE DUE 1016.81 |

# EXHIBIT "B"

**ADT AUTHORIZED DEALER**

1 2 3   A B C

**The ADT Authorized Dealer Program is an ADT Program of Independent ADT Authorized Dealers. Please refer any questions concerning the Program or the Dealer to ADT at 800-539-9690.**

If there is no label, please print Dealer Name and Number in this box (If there is no label, please print Dealer Name and Number in this box)

○ Commercial   ○ Residential

Monitoring Account Number

## ALARM SERVICES CONTRACT (CA ONLY)

Dealer's License No: _____

---

**ADT Authorized Dealer Name and Address**

As used in this Contract, all references to "Authorized Dealer" shall include Authorized Dealer and his employees, agents, representatives, independent contractors, attorneys, officers, directors and shareholders, whether or not referenced in a particular Section of this Contract. The words "I" "Me" and "Customer" as used in this Contract shall have the same meaning.

IF FAMILIARIZATION PERIOD IS REJECTED INITIAL HERE ____

THIS CONTRACT is made and entered into this date, ___ / ___ / ___ , by and between

Customer Name:   Last Name        First Name

Business Name

Located at:   Site Address

City   St   Zip Code

Monitored Location Telephone:   - No. - 1    - No. - 2

Email Address: _____

---

(the "Monitored Location"), Authorized Dealer set forth above, whose corporate offices are located at the Address set forth above. Authorized Dealer agrees to sell and install the security alarm system (the "Equipment") at the Monitored Location and to provide Monitoring Services and Limited and Extended Limited Warranty Service, if applicable (collectively, the "Services"). I agree to pay Authorized Dealer, or if ADT accepts this Contract, ADT for Services to be provided in the amounts summarized in this contract, the Emergency Information Schedule and the Schedule of Protection, upon and subject to the terms and conditions of this Contract.

Communications Authorization: I hereby authorize Authorized Dealer, its assignee, or affiliates to furnish information or updates regarding my security system and/or third party products and services available to me to the contact information provided by me. I may unsubscribe or opt-out by emailing donotcontact@adt.com or by calling 888-DNC4ADT (888-362-4238). Initial here ____

**Basic Monthly Service, Burglary**   $ _____

Service includes: Customer Monitoring Center Signal Receiving and Notification Service for Burglary, Manual Fire, and Manual Police Emergency.

**Optional Electronic Monitoring Services:**

|  | Monthly Rate: |
|---|---|
| ○ Remote Access/Keyfob | $ |
| ○ Fire Alarm/Smoke Detection | $ |
| ○ Carbon Monoxide | $ |
| ○ Two Way Voice | $ |
| ○ Cellguard Backup | $ |
| ○ Investigator Response | $ |
| ○ MPF | $ |
| ○ Other | $ |

**Total Monthly Service Charge**   $ _____

**Total Initial 3-Year Term Service Charge**   $ _____

**Basic Monthly Service, Burglary with Extended Limited Warranty (Residential Customer Only)**   _____

Service includes: Customer Monitoring Center Signal Receiving and Notification Service for Burglary, Manual Fire, and Manual Police Emergency along with Extended Limited Warranty during which I will be billed $25 for each trip made to the Monitored Location after the Limited Warranty period.

BILLING FREQUENCY FOR ALL CHARGES: ○ Monthly ○ Quarterly ○ Semi-Annually ○ Annually

AUTO PAYMENT INFO: ○ Checking Account ○ Savings Account ○ Debit/Credit Card ○ Other

AFFINITY NAME _____

See Attached Schedule of Protection, If Applicable, for Terms and Conditions of Purchase   $ _____   Purchase Amount Total (Proof of payment required)

**TERM OF CONTRACT:** The initial term of this Contract is for three (3) years and there is a 75% early contract termination charge. The alarm monitoring and notification services will begin when (A) the equipment is installed and is operational and (B) the necessary communications connection is completed and verified by Authorized Dealer. If this is a "Residential" Contract, this Contract will automatically renew for successive thirty (30)-day term(s) unless terminated by either party's written notice at least thirty (30) days before the end of the then-current term. If this is a "Commercial" Contract, this Contract will automatically renew for successive one (1)-year term(s) unless terminated by either party's written notice at least thirty (30) days before the end of the then-current term. If terminated, this Contract ends on the last day of the then-current term.

**Notice to Consumers:** Authorized Dealer is an independent ADT dealer. I agree that no agency, employer/employee or fiduciary relationship exists between ADT and Authorized Dealer and that Authorized Dealer is not controlled by ADT. After I sign this Contract, it will be submitted to ADT for acceptance and, if accepted, this Contract will be between ADT and Me. If ADT accepts this Contract, then ADT's responsibility to Me begins on the effective date of this Contract. I expressly authorize submission of this Contract for acceptance by ADT. I acknowledge that ADT reserves the right to reject this Contract, in which case ADT shall have no responsibility to Me. If this Contract is not accepted by ADT, ADT or Authorized Dealer may notify Me of that decision.

I acknowledge that: (A) Dealer has explained additional protection, equipment, and services available to Me, (B) additional protection over and above that provided in this Contract is available and may be obtained from Dealer at an additional cost to Me, (C) I desire and have contracted only for the Equipment and Services itemized on this Contract, and (D) the Equipment will become my property upon payment of the Purchase Amount Total including Sales Tax.

This Contract requires written approval by an Authorized Representative of Dealer. Without such written approval, Dealer's only liability shall be to refund any amount customer paid Dealer upon signing this Contract. This contract requires acceptance by ADT in order to create a contractual relationship between ADT and Me, the Customer. ADT shall have no responsibility for monitoring services until all permits required by law are received and all conditions stated are satisfied. From this sentence to the end of this Contract, including the terms and conditions attached to this contract, and regardless of whether ADT has accepted this Contract, each reference to the word "Dealer" shall also include Authorized Dealer, ADT and its assignee and their respective employees, agents, representatives, independent contractors, attorneys, officers, directors and shareholders.

**FINANCIAL DISCLOSURE STATEMENT**
**THERE IS NO FINANCE CHARGE OR COST OF CREDIT (0% APR) ASSOCIATED WITH THIS CONTRACT.**

| A. NUMBER OF PAYMENTS FOR THE INITIAL TERM IS 36. | B. AMOUNT OF EACH PAYMENT IS (TOTAL MONTHLY SERVICE CHARGE ABOVE). $ | TOTAL OF PAYMENTS FOR THE INITIAL TERM IS $ _____ (A. TIMES B.) (EXCLUSIVE OF ANY APPLICABLE TAXES, FEES, FINES AND RATE INCREASES.) |
|---|---|---|

LATE CHARGE – PAYMENT IS DUE PURSUANT TO MY SELECTED BILLING FREQUENCY PRIOR TO THE START OF SERVICE. MY FIRST BILL/CHARGE WILL BE SENT/MADE SHORTLY AFTER MY SERVICE BEGINS. DEALER OR ADT MAY IMPOSE A ONE-TIME LATE CHARGE ON EACH PAYMENT THAT IS MORE THAN TEN (10) DAYS LATE DUE UP TO THE MAXIMUM AMOUNT PERMITTED BY LAW, BUT IN NO EVENT WILL THIS AMOUNT EXCEED $5.00.

PREPAYMENT – IF I PREPAY THE TOTAL OF PAYMENTS PRIOR TO THE END OF THE INITIAL TERM OF THIS CONTRACT, THERE IS NO PENALTY OR REFUND.

SEE PARAGRAPHS 2, 3, 15 AND 19 OF THIS CONTRACT FOR ADDITIONAL INFORMATION ABOUT NONPAYMENT, DEFAULT, ACCELERATION AND RATE INCREASES.

**CANCELLATION RIGHT (Residential Customer only)**
**I, THE CUSTOMER, MAY CANCEL THIS TRANSACTION AT ANY TIME PRIOR TO MIDNIGHT OF THE THIRD BUSINESS DAY AFTER THE DATE OF THIS TRANSACTION. SEE THE ATTACHED NOTICE OF CANCELLATION FORM FOR AN**

# IMPORTANT TERMS AND CONDITIONS

## TABLE OF CONTENTS

1. Payments and Consumer Report
2. Early Termination of this Contract
3. Increases in Charges
4. Additional Charges and Offset Rights
5. Limitation of Liability
6. Exclusive Damages Remedy
7. Other Party's Limitation
8. Installation
9. Limited Warranty
10. Extended Limited Warranty/(QSP)
11. Warranty Exclusions
12. No Other Warranties
13. Alarm Monitoring and Notification Service
14. Familiarization Period
15. Failure to Pay Charges or Honor Contract
16. Smoke and Carbon Monoxide Detectors
17. Battery-Powered Devices
18. Communication Facilities
19. Cancellation
20. Assignment
21. Delays
22. Electronic Media; Personal Information
23. Medical
24. Testing
25. Third-Party Installations
26. Notices and General Legal Matters
27. Inspection Service
28. Investigator Response Service
29. Entire Contract
30. Privacy Policy
31. License Information

1. PAYMENTS AND CONSUMER REPORT. (A) All charges are payable in advance. (B) I authorize Dealer to obtain a non-investigative consumer report, commonly referred to as a credit check or credit report, about Me from a consumer reporting agency at any time during the term of this Contract. By my authorized signature, I authorize Dealer to request and obtain credit history from a credit bureau or other agency and that such credit bureau or other agency has my permission to release credit information to Dealer. (C) I understand and agree that Dealer reserves the right to charge Me for any costs incurred by it, related to each of the Services chosen by Me during the initial term and renewal term.

2. EARLY TERMINATION OF THIS CONTRACT. I AGREE THAT THE CHARGES DUE UNDER THIS CONTRACT ARE BASED ON MY AGREEMENT TO RECEIVE AND PAY FOR THE SERVICES FOR THREE (3) FULL YEARS. IF I CANCEL OR OTHERWISE TERMINATE THIS CONTRACT DURING ITS INITIAL THREE (3)-YEAR TERM, I WILL PAY 75% OF THE REMAINING TOTAL MONTHLY SERVICE CHARGES. IF THIS IS A RESIDENTIAL CONTRACT, NO CONTRACT TERMINATION CHARGES ARE DUE IF I TERMINATE DURING THE THIRTY (30)-DAY RENEWAL PERIOD(S). IF THIS IS A COMMERCIAL CONTRACT, AND I TERMINATE THIS CONTRACT DURING ITS INITIAL THREE (3)-YEAR TERM OR DURING A RENEWAL TERM, I WILL PAY AN AMOUNT EQUAL TO 75% OF THE CHARGES TO BE PAID BY ME DURING THE REMAINING INITIAL TERM OR REMAINING RENEWAL TERM OF THIS CONTRACT. THIS AMOUNT IS A CONTRACT TERMINATION CHARGE AND FAIRLY APPROXIMATES THE DAMAGES TO DEALER FROM MY EARLY TERMINATION. THIS IS NOT A PENALTY. UPON TERMINATION BY CUSTOMER AT THE DATE SPECIFIED ABOVE, THIS AMOUNT IS DUE AND PAYABLE IMMEDIATELY IN FULL.

3. INCREASES IN CHARGES. I agree that Dealer has the right to increase the annual service charge for any Service at any time after the initial term. If I object in writing to the increase within thirty (30) days of receiving notice of the increase, and if Dealer does not waive the increase, then I may terminate this Contract effective thirty (30) days after Dealer's receipt of my written notice of termination. In this situation, I will not have to pay the price increase or the contract termination charges described in Paragraph 2. Early Termination of this Contract above. If this is a Commercial Contract, Dealer has the right to increase the annual service charge at any time after the first year.

4. ADDITIONAL CHARGES AND OFFSET RIGHTS. I agree to pay: all construction/alarm permit fees; all directly or indirectly imposed false alarm fines or charges; all telephone or signal transmission company charges; and all other assessment, fees or charges related to the Equipment. I also agree to pay a service charge if a Dealer representative responds to a service call or alarm at my premises because I: improperly followed operating instructions; failed to properly lock or close a window, door or other protected point; or improperly adjusted CCTV cameras, monitors or accessories. If Dealer owes Me money when this Contract ends, I agree that Dealer has the right to deduct from an amount owed Me: (A) service charges for thirty (30) days, if I fail to give the required written termination notice set forth in the Term of Contract Paragraph on Page One of this Contract; (B) any contract termination charges that I may owe as set forth in Paragraph 2. Early Termination of Contract above and (C) any other additional charges, amounts or deposits that I owe to Dealer. If the amount I owe Dealer equals or exceeds the amount that Dealer owes to Me or if Dealer owes Me a credit of five dollars ($5.00) or less, I agree that Dealer will not be obligated to refund any amounts to Me.

5. LIMITATION OF LIABILITY.

A. INSURANCE; WAIVER OF SUBROGATION. I ACKNOWLEDGE AND AGREE THAT DEALER IS NOT AN INSURER AND THAT DEALER IS NOT PROVIDING ME WITH INSURANCE OF ANY TYPE. I FURTHER ACKNOWLEDGE AND AGREE THAT THE AMOUNTS I PAY DEALER ARE NOT INSURANCE PREMIUMS AND ARE NOT RELATED TO THE VALUE OF MY PROPERTY, ANYONE ELSE'S PROPERTY LOCATED IN MY PREMISES, OR ANY RISK OF LOSS AT MY PREMISES. INSTEAD, THE AMOUNTS DEALER CHARGES ME ARE BASED SOLELY UPON THE VALUE OF THE EQUIPMENT AND SERVICES DEALER PROVIDES AND UPON THE LIMITED LIABILITY DEALER ASSUMES UNDER THIS CONTRACT. IF I WANT INSURANCE TO PROTECT AGAINST ANY RISK OF LOSS AT MY PREMISES, I WILL PURCHASE IT. IN THE EVENT OF ANY LOSS, DAMAGE OR INJURY, I AGREE TO LOOK EXCLUSIVELY TO MY INSURER AND NOT TO DEALER TO COMPENSATE ME OR ANYONE ELSE REGARDLESS OF THE CONDUCT OF DEALER. I RELEASE AND WAIVE FOR MYSELF AND MY INSURER ALL SUBROGATION AND OTHER RIGHTS TO RECOVER AGAINST DEALER ARISING AS A RESULT OF THE PAYMENT OF ANY CLAIM FOR LOSS, DAMAGE OR INJURY.

B. NO GUARANTEE; NO LIABILITY. I HEREBY ACKNOWLEDGE AND AGREE THAT DEALER'S EQUIPMENT AND SERVICES DO NOT CAUSE AND CANNOT ELIMINATE OCCURRENCES OF THE EVENTS THEY ARE INTENDED TO DETECT OR AVERT, INCLUDING BUT NOT LIMITED TO, FIRES, FLOODS, BURGLARIES, ROBBERIES AND MEDICAL PROBLEMS. I UNDERSTAND THAT OTHER THAN THE LIMITED WARRANTY AND/OR QUALITY SERVICE PLAN SET FORTH IN THE TERMS AND CONDITIONS PARAGRAPH 9. LIMITED WARRANTY AND PARAGRAPH 10. EXTENDED LIMITED WARRANTY/QUALITY SERVICE PLAN (WHICH OBLIGATES DEALER ONLY TO REPAIR EQUIPMENT AND DOES NOT IMPACT THIS LIMITATION OF LIABILITY), DEALER MAKES NO GUARANTY OR WARRANTY, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, THAT THE EQUIPMENT AND SERVICES PROVIDED WILL DETECT OR AVERT SUCH INCIDENTS OR THEIR CONSEQUENCES. FURTHER, I ACKNOWLEDGE AND AGREE THAT DEALER DOES NOT UNDERTAKE ANY RISK THAT I OR MY PROPERTY, OR THE PERSON OR PROPERTY OF OTHERS, MAY BE SUBJECT TO INJURY OR LOSS IF SUCH AN EVENT OCCURS. FURTHER, I ACKNOWLEDGE AND AGREE THAT THE ALLOCATION OF SUCH RISK REMAINS WITH ME, AND NOT WITH DEALER. FOR THESE REASONS, I HEREBY RELEASE, WAIVE, DISCHARGE, AND PROMISE NOT TO SUE OR BRING ANY CLAIM OF ANY TYPE AGAINST DEALER FOR LOSS, DAMAGE OR INJURY RELATING TO THE EQUIPMENT OR SERVICES PROVIDED BY DEALER REGARDLESS OF THE CLAIM OR CAUSE.

C. EXCLUSIVE REMEDY. IT IS IMPRACTICAL AND EXTREMELY DIFFICULT TO DETERMINE THE ACTUAL DAMAGES, IF ANY, THAT MAY RESULT FROM A FAILURE BY DEALER TO PERFORM ANY OF ITS OBLIGATIONS. UNDER NO CIRCUMSTANCES WILL I ATTEMPT TO HOLD DEALER LIABLE FOR ANY CONSEQUENTIAL OR INCIDENTAL DAMAGES, INCLUDING WITHOUT LIMITATION, DAMAGES FOR PERSONAL INJURY OR DAMAGES TO PROPERTY. IF, NOTWITHSTANDING THE PROVISIONS OF PARAGRAPH 5. LIMITATION OF LIABILITY, DEALER IS FOUND LIABLE FOR LOSS, DAMAGE OR INJURY UNDER ANY LEGAL THEORY DUE TO A FAILURE OF THE SERVICES AND/OR EQUIPMENT PROVIDED BY DEALER, DEALER'S LIABILITY TO ME SHALL BE LIMITED TO A SUM EQUAL TO 10% OF THE ANNUAL SERVICE CHARGE OR $500, WHICHEVER IS GREATER. I ACKNOWLEDGE AND AGREE THAT THIS AGREED-UPON AMOUNT IS NOT A PENALTY; RATHER, IT IS MY SOLE REMEDY. UPON MY REQUEST, DEALER MAY AGREE TO ASSUME LIABILITY BEYOND WHAT IS PROVIDED FOR IN PARAGRAPH 5. LIMITATION OF LIABILITY BY ATTACHING A SIGNED AMENDMENT TO THIS CONTRACT SETTING FORTH THE EXTENT OF DEALER'S LIABILITY AND THE ADDITIONAL CHARGES TO ME.

D. APPLICATION. THE PROVISIONS OF PARAGRAPH 5. LIMITATION OF LIABILITY APPLY NO MATTER HOW THE LOSS, DAMAGE, INJURY OR OTHER CONSEQUENCE OCCURS, EVEN IF DUE TO THE PERFORMANCE OR NONPERFORMANCE BY DEALER OF ITS OBLIGATIONS UNDER THIS CONTRACT OR FROM NEGLIGENCE (ACTIVE OR OTHERWISE), STRICT LIABILITY, VIOLATION OF ANY APPLICABLE CONSUMER PROTECTION LAW OR ANY OTHER THEORY OF LIABILITY OR ALLEGED FAULT ON THE PART OF DEALER.

E. INDEMNITY. IF ANY OTHER PERSON, INCLUDING MY SUBROGATING INSURER, MAKES ANY CLAIM OR FILES ANY LAWSUIT AGAINST DEALER IN ANY WAY RELATED TO THE EQUIPMENT OR SERVICES PROVIDED BY DEALER TO ME, I AGREE TO INDEMNIFY, DEFEND AND HOLD DEALER HARMLESS FROM ANY AND ALL SUCH CLAIMS AND LAWSUITS, INCLUDING THE PAYMENT OF ALL DAMAGES, EXPENSES, COSTS AND ATTORNEY FEES. MY DUTY TO DEFEND IS SEPARATE AND DISTINCT FROM MY DUTY TO INDEMNIFY AND HOLD HARMLESS AND ARISES UPON THE ASSERTION OF A CLAIM OR DEMAND AGAINST DEALER REGARDLESS OF WHETHER DEALER HAS BEEN FOUND LIABLE OR WHETHER DEALER HAS INCURRED ANY EXPENSE.

F. TIME TO BRING CLAIM OR LAWSUIT. I AGREE NOT TO BRING ANY LAWSUIT OR ACTION AGAINST DEALER MORE THAN ONE (1) YEAR AFTER THE DATE OF OCCURRENCE OF THE INCIDENT THAT RESULTED IN THE LOSS, INJURY OR DAMAGE, OR THE SHORTEST DURATION PERMITTED UNDER APPLICABLE LAW IF THIS ONE (1) YEAR LIMITATION IS DETERMINED TO BE UNENFORCEABLE FOR ANY REASON.

G. BENEFIT TO OTHERS. THE PROVISIONS OF THIS PARAGRAPH 5. LIMITATION OF LIABILITY, AS WELL AS THE OTHER PROTECTIONS SET FORTH IN THIS CONTRACT THAT ARE FOR THE BENEFIT OF DEALER, SHALL APPLY TO AND ARE INTENDED TO BENEFIT (1) DEALER AND ITS AGENTS, EMPLOYEES, CONTRACTORS, SUBSIDIARIES, AFFILIATES, PARENTS (BOTH DIRECT AND INDIRECT) AND AFFINITY MARKETERS, AND (2) ADT AND ITS AGENTS, EMPLOYEES, CONTRACTORS, SUBSIDIARIES, DEALERS, AFFILIATES, PARENTS (BOTH DIRECT AND INDIRECT) AND AFFINITY MARKETERS, WHETHER OR NOT ADT ACCEPTS THIS CONTRACT.

H. WAIVER OF TORT CLAIMS. I AGREE THAT MY DUTIES OWED TO ME BY DEALER ARE SET FORTH EXCLUSIVELY IN THIS CONTRACT AND I EXPRESSLY WAIVE ANY CLAIMS OR DEFENSES BASED ON TORTIOUS CONDUCT, INCLUDING WILLFUL OR INTENTIONAL TORTS. I FURTHER ACKNOWLEDGE THAT THERE ARE OTHER PROVIDERS OF THE EQUIPMENT AND SERVICES SET FORTH IN THIS AGREEMENT AND AGREE TO CONTRACT WITH DEALER NOTWITHSTANDING THE PROVISIONS IN THIS PARAGRAPH 5 AND OTHER RESTRICTIONS ON THE LIABILITY OF DEALER.

LINE IS CUT OR INTERRUPTED. DEALER MAY NOT BE ABLE TO DOWNLOAD SYSTEM CHANGES OR PROVIDE CERTAIN AUXILIARY MONITORING SERVICES THROUGH A NON TRADITIONAL TELEPHONE LINE OR SERVICE. MY ALARM PANEL MAY BE UNABLE TO SEIZE MY TELEPHONE LINE TO TRANSMIT AN ALARM SIGNAL IF ANOTHER CONNECTION IS OFF THE HOOK DUE TO IMPROPER CONNECTION OR OTHERWISE. DEALER RECOMMENDS THAT I TEST MY EQUIPMENT MONTHLY, EVEN THOUGH A SUCCESSFUL TEST OF MY EQUIPMENT DOES NOT GUARANTEE THAT DEALER WILL RECEIVE ALARM SIGNALS FROM MY EQUIPMENT IN THE FUTURE. DEALER WILL NOT PROVIDE FIRE OR SMOKE ALARM MONITORING OR UL CERTIFIED SYSTEMS MONITORING TO COMMERCIAL CUSTOMERS BY MEANS OTHER THAN A TRADITIONAL TELEPHONE LINE AND COMMERCIAL CUSTOMER UNDERSTANDS THAT IT IS SOLELY RESPONSIBLE FOR ASSURING THAT IT USES TRADITIONAL TELEPHONE SERVICE FOR ANY SUCH MONITORING. COMMERCIAL CUSTOMER ACKNOWLEDGES THAT ANY DECISION TO USE NON-TRADITIONAL TELEPHONE SERVICE AS THE METHOD FOR TRANSMITTING ALARM SIGNALS IS BASED ON COMMERCIAL CUSTOMER'S OWN INDEPENDENT BUSINESS JUDGMENT AND THAT ANY SUCH DECISION IS MADE WITHOUT ANY ASSISTANCE, INVOLVEMENT, INPUT, RECOMMENDATION OR ENDORSEMENT ON THE PART OF DEALER. COMMERCIAL CUSTOMER ASSUMES SOLE AND COMPLETE RESPONSIBILITY FOR ESTABLISHING AND MAINTAINING ACCESS TO AND USE OF THE NON-TRADITIONAL TELEPHONE SERVICE FOR CONNECTION TO THE ALARM MONITORING EQUIPMENT AND FOR ANY LIABILITY ASSOCIATED WITH THE USE OF THE NON-TRADITIONAL TELEPHONE SERVICE.

19. CANCELLATION. I understand that Dealer may, at any time, cancel this Contract at its option if: (A) Dealer's alarm monitoring center is destroyed or damaged so that it is impractical for Dealer to continue Service; (B) Dealer cannot acquire or retain the transmission connections or authorization to transmit signals between my premises and its alarm monitoring center, or the fire or police department or other agency, or between Dealer's alarm monitoring center and the fire or police department or other agency; (C) I fail to follow Dealer's recommendations to repair or replace any defective parts of the Equipment not covered under the Limited Warranty or QSP, if purchased; (D) I fail to follow the operating instructions for the Equipment or monitoring; or (E) Dealer determines in its absolute and sole discretion that it is impractical to continue Service due to the modification or alteration of my premises after installation. If Dealer cancels for any of the reasons stated immediately above, Dealer will refund any advance payments made for services to be supplied after the date of such termination, less any amounts still due for the installation of the Equipment, for Services already rendered, and any other charges due, but Dealer will not be liable for damages or subject to a contract termination charge as a result of such termination. Dealer may cancel this Contract with or without notice at its option if: (A) I fail to pay any monies when due under this Contract; (B) I fail to comply with or breach any other term or condition of this Contract; (C) I fail to maintain my premises in a safe and sanitary condition; or (D) I change to a telephone/communications service incompatible with alarm signal transmission. If Dealer cancels for any of the reasons stated immediately above, Dealer will not be liable for damages or subject to penalty as a result of such termination. In the event of a default and/or termination of the Contract, Dealer has the right under this Contract to reprogram or disconnect my Equipment so that it no longer communicates with the central station, without notice to Me. In the event that Dealer must make a service call to the Monitored Location to terminate the transmission of signals to its central station, I shall pay $50 to Dealer as a disconnect fee. In the event I do not permit Dealer to reprogram or disconnect the Equipment so that it no longer communicates with its central station, I will be responsible for the Total Monthly Service Charge under the Contract as long as the Equipment is sending signals to Dealer's central station.

20. ASSIGNMENT. I UNDERSTAND THAT THIS CONTRACT IS NOT ASSIGNABLE BY ME EXCEPT UPON THE PRIOR WRITTEN CONSENT OF DEALER, AND THAT ANY ASSIGNMENT BY ME WITHOUT THE PRIOR WRITTEN CONSENT OF DEALER SHALL BE VOID AND OF NO EFFECT. DEALER SHALL HAVE THE RIGHT TO ASSIGN THIS CONTRACT TO ANY OTHER PERSON, FIRM OR CORPORATION OR ITS AFFILIATES, WITHOUT NOTICE TO ME. DEALER SHALL HAVE THE FURTHER RIGHT TO SUBCONTRACT ANY INSTALLATION AND/OR SERVICES, WITHOUT NOTICE TO ME, INCLUDING BUT NOT LIMITED TO, MONITORING SERVICES AND/OR LIMITED WARRANTY/EXTENDED LIMITED WARRANTY (QSP) SERVICES THAT DEALER MAY PERFORM. I ACKNOWLEDGE AND AGREE THAT THIS CONTRACT AND PARTICULARLY THOSE PARAGRAPHS RELATING TO DEALER'S LIMITED LIABILITY, DISCLAIMER OF WARRANTIES AND THIRD-PARTY INDEMNIFICATION INURE TO THE BENEFIT OF, AND ARE APPLICABLE TO, ANY OF ITS ASSIGNEE(S) AND/OR SUBCONTRACTORS, WITH THE SAME FORCE AND EFFECT AS THEY APPLY TO DEALER. I FURTHER ACKNOWLEDGE AND AGREE THAT AN ASSIGNEE(S) OF THIS CONTRACT SHALL NOT BE RESPONSIBLE FOR CLAIMS, LIABILITIES OR DAMAGES THAT ACCRUED PRIOR TO THE DATE OF SUCH ASSIGNMENT AND ARE HEREBY RELEASED FROM SAME. AS IS SET FORTH ON PAGE 1, ANY REFERENCES TO DEALER HEREIN SHALL BE INTERPRETED TO INCLUDE REFERENCES TO ITS ASSIGNEE(S), WHETHER OR NOT A SPECIFIC REFERENCE IS MADE TO ASSIGNEE(S).

21. DELAYS. I AGREE THAT DEALER HAS NO RESPONSIBILITY OR LIABILITY TO ME OR ANY OTHER PERSON FOR DELAYS IN THE INSTALLATION OR REPAIR OF THE EQUIPMENT REGARDLESS OF THE REASON. I AGREE THAT DEALER HAS NO RESPONSIBILITY OR LIABILITY FOR INTERRUPTIONS OF SERVICE OR ANY RESULTING CONSEQUENCES, WHETHER DUE TO STRIKE, RIOT, FLOOD, FIRE, TERRORISM, ACT OF GOD OR ANY OTHER CAUSE WITHIN OR BEYOND DEALER'S CONTROL. IF THERE ARE SERVICE INTERRUPTIONS, DEALER HAS NO OBLIGATION TO SUPPLY ME WITH SUBSTITUTE SERVICES.

22. ELECTRONIC MEDIA; PERSONAL INFORMATION. I agree that Dealer may scan, image or otherwise convert this Contract into an electronic format of any nature and may destroy the paper copy of this Contract. I also agree that a copy of this Contract produced from such electronic format is legally equivalent to the original for any and all purposes, including litigation. Likewise, I agree that Dealer's receipt by fax of the Contract signed by Me legally binds Me and such fax copy or electronic copy is legally equivalent to the original for any and all purposes, including litigation. I confirm that the personal information about Me and third parties that I provided to Dealer is true and complete and that I shall notify Dealer without delay in writing of any change to this information. I consent to Dealer's use of my personal information and that of third parties that I provided to Dealer for the purpose of monitoring, setting up and administering my security services (including credit approval, invoicing, collection and to provide Me with information on new services or equipment). I have obtained the consent of, or hereby consent to, the third parties whose personal information I provided to Dealer to use such personal information for the administration of my account with Dealer and as provided in this Contract. I consent and agree that Dealer may collect (including this consent to record my telephone conversations with Dealer's representatives), use, disclose and transfer my personal information and that of third parties provided by Me to Dealer, Dealer's parents, affiliates, subsidiaries, successor entities, subcontractors or assignees of this Contract or any applicable authority having jurisdiction that requests such information to administer alarm monitoring services or alarm system license, permit or similar programs.

23. MEDICAL. I understand and accept that Dealer specifically disclaims any responsibility for Services associated with the notification or dispatching of paramedics, doctors and other medical personnel and/or ambulance services and if there are any charges incurred as a result of said notification, said charges shall be my responsibility, whether requested or not and whether such entities were correctly or incorrectly notified, and agree to indemnify Dealer regarding such charges.

24. TESTING. I agree that it is my responsibility to test the Equipment monthly by calling 1-800-369-0996 (and following the prompts).

25. THIRD-PARTY INSTALLATIONS. In the event the equipment at my premises was not installed by Dealer, or its subcontractor, I understand that Dealer makes no warranty or representation that the equipment will function properly and Dealer reserves the right to terminate the obligations under this Contract at any time with written notice to Me. I acknowledge that if the equipment was installed by a third party, that the relationship between Dealer and such third party is that of principal and independent contractor, and not of employer and employee or Dealer and agent.

26. NOTICES AND GENERAL LEGAL MATTERS. (A) Unless otherwise provided in this Contract all notices under this Contract are to be dated, in writing, and are to be sent by US Mail, postage prepaid, addressed to Dealer or Me at the address shown on the front of this Contract. If this Contract has been accepted by ADT, then I shall provide any such notice to ADT by providing written notice as provided herein and contacting ADT at 800-662-5378. We will notify each other in writing of any change of address for the purpose of giving notice under this Contract. Notices are effective five (5) days after the date sent. (B) If a court determines that any provision of this Contract is invalid or unenforceable, that provision(s) shall be deemed amended and enforced to the maximum permitted by state law; however, each and every other provision of this Contract shall continue to be valid and enforceable. (C) The accompanying Emergency Information Schedule, Schedule of Protection and any applicable riders or addendums are incorporated into and made part of this Contract.

27. INSPECTION SERVICE. Where Inspection Service is provided under this Contract, Dealer will perform periodic inspections of the Equipment in the manner and frequency indicated on the front page of this Contract. I authorize Dealer to make any repairs necessitated by damaged or malfunctioning Equipment noted during such an inspection. I further agree to pay Dealer for Service and Equipment charges in connection with those repairs at the then-current rates charged by Dealer unless I purchased QSP under the terms listed in this Contract and such repairs are covered by QSP, in which case the service charges will be as set forth in Paragraph 10. Extended Limited Warranty/Quality Service Plan (QSP).

28. INVESTIGATOR RESPONSE SERVICE. Where Investigator Response Service is provided under this Contract, Dealer has entered into a separate agreement with an Investigator Response Service to provide investigator response at my option. Neither Dealer nor the Investigator Response Service will be liable for Dealer's or the Investigator Response Service's failure to perform hereunder due to acts of God, fire, strikes, work stoppages, differences with workmen, restrictions imposed by government agencies, war, terrorism, riot or any cause outside of Dealer's or the Investigator Response Service's control as the case may be. Investigator Response Service may be terminated or substituted at any time at Dealer's option.

29. ENTIRE CONTRACT. THIS CONTRACT AND THE ACCOMPANYING SCHEDULE OF PROTECTION AND EMERGENCY INFORMATION SCHEDULE CONSTITUTE THE ENTIRE CONTRACT BETWEEN DEALER AND ME. THE TERMS AND CONDITIONS OF THIS CONTRACT APPLY AS PRINTED WITHOUT ALTERATION OR QUALIFICATION, UNLESS A CHANGE IS APPROVED IN A SIGNED WRITING BY DEALER'S AUTHORIZED REPRESENTATIVE. THE TERMS AND CONDITIONS OF THIS CONTRACT SHALL GOVERN EVEN IF I SUBMITTED A PURCHASE ORDER OR OTHER DOCUMENT WITH INCONSISTENT OR ADDITIONAL TERMS AND CONDITIONS. ANY ORAL REPRESENTATIONS MADE BY DEALER, ITS ASSIGNS OR THEIR AGENTS ARE MERGED INTO THIS AGREEMENT AND SHALL BE OF NO FORCE OR EFFECT.

30. PRIVACY POLICY. Dealer will make its privacy policy available to Me. IF ADT ACCEPTS THIS CONTRACT, I UNDERSTAND THAT ADT MAINTAINS AN ONLINE PRIVACY POLICY AT WWW.ADT.COM/PRIVACY THAT IS APPLICABLE TO THE TERMS, CONDITIONS AND OBLIGATIONS OF THE PARTIES TO THIS

10. EXTENDED LIMITED WARRANTY/QUALITY SERVICE PLAN (QSP). If I purchased the Extended Limited Warranty, which is also called the Quality Service Plan or QSP, Dealer will repair or, at its option, replace any part of the Equipment that requires repair or replacement due to ordinary wear and tear or malfunction and Dealer will also provide a labor rate discount, at the then-current labor discount rate, for each service call for an excluded condition below. Dealer will use new or functionally operative parts for replacements. The QSP and the billing for it will commence as of the date the Equipment is installed, operational and the necessary communications connection is completed and will continue for the term of this Contract, except after the 90-day Limited Warranty Period I will be charged the then-applicable trip charge for each service call during the QSP period. QSP will automatically renew for successive thirty (30)-day terms at Dealer's then-current QSP rate unless terminated by either party's written notice at least thirty (30) days before the end of the then-current term. If I purchase QSP after the initial Equipment installation, my Equipment must be in good working condition, as determined by Dealer in its absolute discretion, at the time of QSP purchase. To request QSP, I will call 800-662-5378. In the event that I do not enter into an agreement with Dealer to provide QSP services, charges for repair services will be billed to Me based upon Dealer's service rates in effect at the time repair service is rendered. Such service rates are subject to change without notice. I acknowledge that it is my responsibility to make and pay for all repairs and replacements should any part of the Equipment be damaged by lightning, electrical surges or other acts of God, fire, riot, war, terrorism, negligence, vandalism or any external cause.

11. WARRANTY EXCLUSIONS. Dealer performs warranty services only during normal working hours. IF I REQUEST DEALER TO PERFORM WARRANTY SERVICES OUTSIDE NORMAL WORKING HOURS, I WILL PAY DEALER FOR THE SERVICES AT DEALER'S THEN-CURRENT RATES FOR LABOR AND PARTS. THE LIMITED WARRANTY PROVIDED UNDER THIS CONTRACT AND, IF PURCHASED, QSP DOES NOT APPLY IF DEALER DETERMINES UPON INSPECTION THAT ANY OF THE FOLLOWING CONDITIONS CAUSED THE NEED FOR SERVICE: (A). Damage resulting from accidents, theft, Acts of God, natural disasters, war, labor disputes, terrorism, civil strife, electrical surges, alterations or misuse; (B) Failure to properly close or secure a door, window or other point protected by an alarm device; (C)Failure to properly follow the operating instructions; (D) Trouble in a telephone line, use of non-traditional telephone line or service (including but not limited to DSL, ADSL, VOIP, etc.) or due to interruption of power; (E) Repairs needed to window foil, security screens, exterior mounted devices or PROM (Programmable Read Only Memory); (F) Ordinary maintenance or wear and tear (not excluded for QSP); (G) Alterations to my premises or failure of my premises to comply with any applicable codes, regulations or laws; or (H) Alteration or damage to the Equipment caused by Me or by a cause beyond Dealer's control. Dealer will not perform warranty services on any device not installed by Dealer. Battery replacement is excluded from all warranties.

12. NO OTHER WARRANTIES. OTHER THAN THE LIMITED WARRANTY PROVIDED UNDER THIS CONTRACT AND, IF PURCHASED, QSP, I AGREE THAT DEALER MAKES NO GUARANTY OR WARRANTY OF ANY KIND WHATSOEVER, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, WITH RESPECT TO THE SERVICES DEALER PERFORMS OR THE EQUIPMENT IT PROVIDES. MY EXCLUSIVE WARRANTY REMEDY IS SET FORTH IN PARAGRAPHS 9. LIMITED WARRANTY AND 10. EXTENDED LIMITED WARRANTY/QUALITY SERVICE PLAN (QSP) ABOVE. SOME STATES MAY NOT ALLOW THE PARTIES TO A CONTRACT TO LIMIT THE LENGTH OF AN IMPLIED WARRANTY. THE LAWS OF THE STATE WHERE THIS CONTRACT WAS SIGNED WILL DETERMINE WHETHER THESE LIMITATIONS AND EXCLUSIONS APPLY.

13. ALARM MONITORING AND NOTIFICATION SERVICE. If I purchase a service that includes response by police, fire department, guard, medical emergency notification, or two-way voice monitoring services and such an alarm is received at Dealer's alarm monitoring center, Dealer may, at its sole and absolute discretion, attempt to contact Me and/or anyone on my Emergency Information Schedule to confirm that the alarm is not false. If Dealer does not contact Me and/or someone on my Emergency Information, or if Dealer questions the response it receives upon such contact; then (A) Dealer will endeavor to notify the appropriate police or fire department or (B) if guard response service is provided and an alarm requires police response, Dealer will endeavor to dispatch a representative to make an investigation of the exterior of the premises from his or her vehicle and, upon evidence of a crime, Dealer will endeavor to notify the appropriate police department. If Dealer provides supervisory alarm or trouble alarm monitoring services (or if such services are actively programmed into my Equipment) and Dealer's alarm monitoring center receives an alarm, then Dealer may attempt to notify my premises and/or the representative I designate. Dealer may use an automated calling device to deliver such notification. If medical emergency notification services are provided, I agree: that the very nature of such services, regardless of any delay, involves uncertainty, risk and possible serious injury, disability or death, for which I will not attempt to hold Dealer responsible or liable; that the equipment furnished for medical emergency notification services is not foolproof and may experience signal transmission failures or delays for any number of reasons; and that the actual time required for medical emergency providers to arrive at my premises and/or to transport any person requiring medical attention is unpredictable with many contributing factors, including telephone network operation, distance, weather, road and traffic conditions, alarm equipment function and human factors both within and outside of Dealer's control. I agree and acknowledge that Dealer's performance of, delay in performance of, or failure to perform medical emergency notification services under the Contract are subject to and controlled by Paragraph 5. Limitation of Liability of this Contract. The person(s) identified on my Emergency Information Schedule is authorized to act on my behalf. I understand that the equipment the Equipment Dealer provides may not operate with other companies' alarm monitoring equipment and may prevent Me from using such equipment in the event I terminate my services. I understand that local laws, ordinances or policies may restrict Dealer's ability to provide the alarm monitoring and notification services described in this Contract and/or necessitate modified or additional services with additional charges to Me. I understand that Dealer employs industry-recognized measures to help reduce occurrences of false alarms. These measures include, but are not limited to, implementation of default settings on alarm panels and various procedures at Dealer's alarm monitoring centers to determine when and how to respond, if at all, to certain alarm events. I consent to Dealer's use of these measures and agree that my Equipment has not been designed, programmed or installed pursuant to any law, code or rule that may be applicable to my particular premises including, but not limited to, any code provisions of the National Fire Protection Association or the International Residential Code. I understand that, upon receiving notification that an alarm signal has been received by Dealer, the police department, fire department or other responding authority may forcibly enter my residence. I understand that Dealer will never arrest or detain any person for any reason.

14. FAMILIARIZATION PERIOD. UNLESS I HAVE REJECTED THE FAMILIARIZATION PERIOD BY INITIALING THE APPROPRIATE LINE ON THE FIRST PAGE OF THIS CONTRACT (EXCEPT WHERE FAMILIARIZATION IS REQUIRED BY LAW), I AGREE THAT DURING A SEVEN (7) DAY FAMILIARIZATION PERIOD, OR LONGER PERIOD IF REQUIRED BY APPLICABLE LAW, FOLLOWING COMPLETION OF THE INSTALLATION (AND DURING ANY APPLICABLE EXTENSIONS) DEALER HAS NO OBLIGATION TO, AND WILL NOT, RESPOND TO ANY ALARM SIGNAL FROM MY PREMISES. I ALSO AGREE THAT DURING SUCH PERIOD DEALER HAS NO OBLIGATION TO, AND WILL NOT, NOTIFY ANY AUTHORITIES, ME OR MY DESIGNATED REPRESENTATIVE, OR TAKE ANY OTHER ACTION WITH REGARD TO ANY ALARM SIGNAL DEALER RECEIVES, EVEN IF DUE TO AN ACTUAL EMERGENCY.

15. FAILURE TO PAY CHARGES OR HONOR CONTRACT. If I fail to make any payment when due or to honor any other term or condition of this Contract, Dealer may immediately stop providing the alarm monitoring and notification services and repossess or disable the equipment with or without notice. I will grant Dealer access to my premises and allow it to reprogram or disable the Equipment. Dealer has no liability if Dealer stops providing the alarm monitoring and notification services, for any reason, or repossesses or disable the Equipment. I agree that Dealer is not required to restore or repair my premises as a result of repossessing or disabling the Equipment. In addition to these remedies, Dealer does not waive and expressly retains the right to exercise any other legal remedy, including the right to charge Me a late fee at the highest legal rate for each month that a payment is not received and/or interest on the unpaid amount, but not to exceed $5.00, by stopping to provide the monitoring and notification services or reprogramming or disabling the equipment. Dealer also has the right to report Me to one or more consumer reporting agencies if I become delinquent on my account (more than 90 days without a payment).

16. SMOKE AND CARBON MONOXIDE DETECTORS. IF MY EQUIPMENT INCLUDES SMOKE AND/OR CARBON MONOXIDE DETECTORS, I ACKNOWLEDGE AND AGREE THAT: (A) THE NUMBER AND PLACEMENT OF SUCH DETECTORS MAY NOT FULFILL THE REQUIREMENTS OR RECOMENDATIONS IN CODES, LAWS OR STANDARDS THAT APPLY IN MY JURISDICTION, INCLUDING THE CODE PROVISIONS OF THE NATIONAL FIRE PROTECTION ASSOCIATION AND THE INTERNATIONAL RESIDENTIAL CODE; (B) I HAVE COMPLETE AND SOLE RESPONSIBILITY FOR COMPLYING WITH ANY AND ALL CODES, LAWS AND STANDARDS THAT MAY APPLY TO THE INSTALLATION, PLACEMENT AND MAINTENANCE OF MY EQUIPMENT; AND (C) ANY SMOKE AND/ OR CARBON MONOXIDE DETECTORS DESCRIBED IN THIS CONTRACT ARE SUPPLEMENTAL DEVICES ONLY AND ARE NOT INTENDED TO BE PART OF A PRIMARY FIRE ALARM OR CARBON MONOXIDE DETECTION SYSTEM. I UNDERSTAND THAT DEALER'S ELECTRICAL SMOKE DETECTORS AND CARBON MONOXIDE DETECTORS, IF INSTALLED ON MY PREMISES, ARE DESIGNED TO BE CONNECTED TO AN ELECTRICAL POWER SOURCE. IN THE EVENT THESE DETECTORS WILL NOT OPERATE, THE ALARM WILL NOT SOUND, AND THE ALARM SIGNAL WILL NOT BE TRANSMITTED, WHEN THE ELECTRICITY IS CUT OFF, THE BACKUP BATTERY, IF INCLUDED AS PART OF THE SYSTEM, IS LOW OR DEAD, OR FIRE OR SOME OTHER CAUSE CUTS OFF THE ELECTRICITY BEFORE THE ALARM IS ACTIVATED, SOUNDS AND TRANSMITTED. I UNDERSTAND THAT CONNECTING THESE DETECTORS TO A SEPARATE DEDICATED ELECTRICAL CIRCUIT MAY INCREASE THEIR RELIABILITY, BUT EVEN DEDICATED CIRCUITS CAN FAIL. I UNDERSTAND THAT THESE DETECTORS ALL HAVE LIMITED USEFUL LIVES, AFTER WHICH TIME THEY WILL NOT FUNCTION. IT IS MY SOLE RESPONSIBILITY TO MONITOR AND REPLACE ALL DETECTORS BEFORE OR AT THE END OF THEIR USEFUL LIVES.

17. BATTERY-POWERED DEVICES. I understand that all battery-powered motion detectors, smoke detectors, door and window contact transmitters and other detection sensors installed under this Contract are not connected to the electrical system of my premises and require batteries to operate. THESE BATTERY-POWERED DETECTION SENSORS WILL NOT OPERATE, AND THE ALARM WILL NOT SOUND, IF THE BATTERIES ARE LOW OR DEAD. I acknowledge that it is my sole responsibility to maintain these batteries and that Dealer recommends that I regularly inspect the sensors for dirt and dust build-up and test the sensors weekly to help maintain continued operation. Dealer also recommends that I carefully read and follow the owner's manual, instructions and warnings for all equipment.

18. COMMUNICATION FACILITIES. (A) AUTHORIZATION. I authorize Dealer to request on my behalf services, orders or equipment from a telephone company, wireless carrier or other company providing communication facilities, signal transmission services or facilities under this Contract (referred to as "Telephone Company"). (B) DIGITAL COMMUNICATOR. I understand that a digital communicator, if installed under this Contract, uses traditional telephone lines for sending

10. EXTENDED LIMITED WARRANTY/QUALITY SERVICE PLAN (QSP). If I purchased the Extended Limited Warranty, which is also called the Quality Service Plan or QSP, Dealer will repair or, at its option, replace any part of the Equipment that requires repair or replacement due to ordinary wear and tear or malfunction and Dealer will also provide a labor rate discount, at the then-current labor discount rate, for each service call for an excluded condition below. Dealer will use new or functionally operative parts for replacements. The QSP and the billing for it will commence as of the date the Equipment is installed, operational and the necessary communications connection is completed and will continue for the term of this Contract, except after the 90-day Limited Warranty Period I will be charged the then-applicable trip charge for each service call during the QSP period. QSP will automatically renew for successive thirty (30)-day terms at Dealer's then-current QSP rate unless terminated by either party's written notice at least thirty (30) days before the end of the then-current term. If I purchase QSP after the initial Equipment installation, my Equipment must be in good working condition as determined by Dealer in its absolute discretion, at the time of QSP purchase. To request QSP, I will call 800-662-5378. In the event that I do not enter into an agreement with Dealer to provide QSP services, charges for repair services will be billed to Me based upon Dealer's service rates in effect at the time repair service is rendered. Such service rates are subject to change without notice. I acknowledge that it is my responsibility to make and pay for all repairs and replacements should any part of the Equipment be damaged by lightning, electrical surges or other acts of God, fire, riot, war, terrorism, negligence, vandalism or any external cause.

11. WARRANTY EXCLUSIONS. Dealer performs warranty services only during normal working hours. IF I REQUEST DEALER TO PERFORM WARRANTY SERVICES OUTSIDE NORMAL WORKING HOURS, I WILL PAY DEALER FOR THE SERVICES AT DEALER'S THEN-CURRENT RATES FOR LABOR AND PARTS. THE LIMITED WARRANTY PROVIDED UNDER THIS CONTRACT AND, IF PURCHASED, QSP DOES NOT APPLY IF DEALER DETERMINES UPON INSPECTION THAT ANY OF THE FOLLOWING CONDITIONS CAUSED THE NEED FOR SERVICE: (A). Damage resulting from accidents, theft, Acts of God, natural disasters, war, labor disputes, terrorism, civil strife, electrical surges, alterations or misuse; (B) Failure to properly close or secure a door, window or other point protected by an alarm device; (C)Failure to properly follow the operating instructions; (D) Trouble in a telephone line, use of non-traditional telephone line or service (including but not limited to DSL, ADSL, VOIP, etc.) or due to interruption of power; (E) Repairs needed to window foil, security screens, exterior mounted devices or PROM (Programmable Read Only Memory); (F) Ordinary maintenance or wear and tear (not excluded for QSP); (G) Alterations to my premises or failure of my premises to comply with any applicable codes, regulations or laws; or (H) Alteration or damage to the Equipment caused by Me or by a cause beyond Dealer's control. Dealer will not perform warranty services on any device not installed by Dealer. Battery replacement is excluded from all warranties.

12. NO OTHER WARRANTIES. OTHER THAN THE LIMITED WARRANTY PROVIDED UNDER THIS CONTRACT AND, IF PURCHASED, QSP, I AGREE THAT DEALER MAKES NO GUARANTY OR WARRANTY OF ANY KIND WHATSOEVER, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, WITH RESPECT TO THE SERVICES DEALER PERFORMS OR THE EQUIPMENT IT PROVIDES. MY EXCLUSIVE WARRANTY REMEDY IS SET FORTH IN PARAGRAPHS 9. LIMITED WARRANTY AND 10. EXTENDED LIMITED WARRANTY/QUALITY SERVICE PLAN (QSP) ABOVE. SOME STATES MAY NOT ALLOW THE PARTIES TO A CONTRACT TO LIMIT THE LENGTH OF AN IMPLIED WARRANTY. THE LAWS OF THE STATE WHERE THIS CONTRACT WAS SIGNED WILL DETERMINE WHETHER THESE LIMITATIONS AND EXCLUSIONS APPLY.

13. ALARM MONITORING AND NOTIFICATION SERVICE. If I purchase a service that includes response by police, fire department, guard, medical emergency notification, or two-way voice monitoring services and such an alarm is received at Dealer's alarm monitoring center, Dealer may, at its sole and absolute discretion, attempt to contact Me and/or anyone on my Emergency Information Schedule to confirm that the alarm is not false. If Dealer does not contact Me and/or someone on my Emergency Information, or if Dealer questions the response it receives upon such contact, then (A) Dealer will endeavor to notify the appropriate police or fire department or (B) if guard response service is purchased by me, Dealer will endeavor to dispatch a representative to make an investigation of the exterior of the premises from his or her vehicle and, upon evidence of a crime, Dealer will endeavor to notify the appropriate police department. If Dealer provides supervisory alarm or trouble alarm monitoring services (or if such services are actively programmed into my Equipment) and Dealer's alarm monitoring center receives an alarm, then Dealer may attempt to notify my premises and/or the representative I designate. Dealer may use an automated calling device to deliver such notification. If medical emergency notification services are provided, I agree: that the very nature of such services, regardless of any delay, involves uncertainty, risk and possible serious injury, disability or death, for which I will not attempt to hold Dealer responsible or liable; that the equipment furnished for medical emergency notification services is not foolproof and may experience signal transmission failures or delays for any number of reasons; and that the actual time required for medical emergency providers to arrive at my premises and/or to transport any person requiring medical attention is unpredictable with many contributing factors, including telephone network operation, distance, weather, road and traffic conditions, alarm equipment function and human factors both within and outside of Dealer's control. I agree and acknowledge that Dealer's performance of, delay in performance of, or failure to perform medical emergency notification services under the Contract are subject to and controlled by Paragraph 5. Limitation of Liability of this Contract. The person(s) identified on my Emergency Information Schedule is authorized to act on my behalf. I understand that the equipment the Equipment Dealer provides may not operate with other companies' alarm monitoring equipment and may prevent Me from using such equipment in the event I terminate my services. I understand that local laws, ordinances or policies may restrict Dealer's ability to provide the alarm monitoring and notification services described in this Contract and/or necessitate modified or additional services with additional charges to Me. I understand that Dealer employs industry-recognized measures to help reduce occurrences of false alarms. These measures include, but are not limited to, implementation of default settings on alarm panels and various procedures at Dealer's alarm monitoring centers to determine when and how to respond, if at all, to certain alarm events. I consent to Dealer's use of these measures and agree that my Equipment has not been designed, programmed or installed pursuant to any law, code or rule that may be applicable to my particular premises including, but not limited to, any code provisions of the National Fire Protection Association or the International Residential Code. I understand that, upon receiving notification that an alarm signal has been received by Dealer, the police department, fire department or other responding authority may forcibly enter my residence. I understand that Dealer will never arrest or detain any person for any reason.

14. FAMILIARIZATION PERIOD. UNLESS I HAVE REJECTED THE FAMILIARIZATION PERIOD BY INITIALING THE APPROPRIATE LINE ON THE FIRST PAGE OF THIS CONTRACT (EXCEPT WHERE FAMILIARIZATION IS REQUIRED BY LAW), I AGREE THAT DURING A SEVEN (7) DAY FAMILIARIZATION PERIOD, OR LONGER PERIOD IF REQUIRED BY APPLICABLE LAW, FOLLOWING COMPLETION OF THE INSTALLATION (AND DURING ANY APPLICABLE EXTENSIONS) DEALER HAS NO OBLIGATION TO, AND WILL NOT, RESPOND TO ANY ALARM SIGNAL FROM MY PREMISES. I ALSO AGREE THAT DURING SUCH PERIOD DEALER HAS NO OBLIGATION TO, AND WILL NOT, NOTIFY ANY AUTHORITIES, ME OR MY DESIGNATED REPRESENTATIVE, OR TAKE ANY OTHER ACTION WITH REGARD TO ANY ALARM SIGNAL DEALER RECEIVES, EVEN IF DUE TO AN ACTUAL EMERGENCY.

15. FAILURE TO PAY CHARGES OR HONOR CONTRACT. If I fail to make any payment when due or to honor any other term or condition of this Contract, Dealer may immediately stop providing the alarm monitoring and notification services and repossess or disable the equipment with or without notice. I will grant Dealer access to my premises and allow it to reprogram or disable the Equipment. Dealer has no liability if Dealer stops providing the alarm monitoring and notification services, for any reason, or repossess or disable the Equipment. I agree that Dealer is not required to restore or repair my premises as a result of repossessing or disabling the Equipment. In addition to these remedies, Dealer does not waive and expressly retains the right to exercise any other legal remedy, including the right to charge Me a late fee at the highest legal rate for each month that a payment is not received and/or interest on the unpaid amount, but not to exceed $5.00, by stopping to provide the monitoring and notification services or reprogramming or disabling the equipment. Dealer also has the right to report Me to one or more consumer reporting agencies if I become delinquent on my account (more than 90 days without a payment).

16. SMOKE AND CARBON MONOXIDE DETECTORS. IF MY EQUIPMENT INCLUDES SMOKE AND/OR CARBON MONOXIDE DETECTORS, I ACKNOWLEDGE AND AGREE THAT: (A) THE NUMBER AND PLACEMENT OF SUCH DETECTORS MAY NOT FULFILL THE REQUIREMENTS OR RECOMENDATIONS IN CODES, LAWS OR STANDARDS THAT APPLY IN MY JURISDICTION, INCLUDING THE CODE PROVISIONS OF THE NATIONAL FIRE PROTECTION ASSOCIATION AND THE INTERNATIONAL RESIDENTIAL CODE; (B) I HAVE COMPLETE AND SOLE RESPONSIBILITY FOR COMPLYING WITH ANY AND ALL CODES, LAWS AND STANDARDS THAT MAY APPLY TO THE INSTALLATION, PLACEMENT AND MAINTENANCE OF MY EQUIPMENT; AND (C) ANY SMOKE AND/OR CARBON MONOXIDE DETECTORS DESCRIBED IN THIS CONTRACT ARE SUPPLEMENTAL DEVICES ONLY AND ARE NOT INTENDED TO BE PART OF A PRIMARY FIRE ALARM OR CARBON MONOXIDE DETECTION SYSTEM. I UNDERSTAND THAT DEALER'S ELECTRICAL SMOKE DETECTORS AND CARBON MONOXIDE DETECTORS, IF INSTALLED ON MY PREMISES, ARE DESIGNED TO BE CONNECTED TO AN ELECTRICAL POWER SOURCE. IN THE EVENT THESE DETECTORS WILL NOT OPERATE, THE ALARM WILL NOT SOUND, AND THE ALARM SIGNAL WILL NOT BE TRANSMITTED, WHEN THE ELECTRICITY IS CUT OFF, THE BACKUP BATTERY, IF INCLUDED AS PART OF THE SYSTEM, IS LOW OR DEAD, OR FIRE OR SOME OTHER CAUSE CUTS OFF THE ELECTRICITY BEFORE THE ALARM IS ACTIVATED, SOUNDS AND TRANSMITTED. I UNDERSTAND THAT CONNECTING THESE DETECTORS TO A SEPARATE DEDICATED ELECTRICAL CIRCUIT MAY INCREASE THEIR RELIABILITY, BUT EVEN DEDICATED CIRCUITS CAN FAIL. I UNDERSTAND THAT THESE DETECTORS ALL HAVE LIMITED USEFUL LIVES, AFTER WHICH TIME THEY WILL NOT FUNCTION. IT IS MY SOLE RESPONSIBILITY TO MONITOR AND REPLACE ALL DETECTORS BEFORE OR AT THE END OF THEIR USEFUL LIVES.

17. BATTERY-POWERED DEVICES. I understand that all battery-powered motion detectors, smoke detectors, door and window contact transmitters and other detection sensors installed under this Contract are not connected to the electrical system of my premises and require batteries to operate. THESE BATTERY-POWERED DETECTION SENSORS WILL NOT OPERATE, AND THE ALARM WILL NOT SOUND, IF THE BATTERIES ARE LOW OR DEAD. I acknowledge that it is my sole responsibility to maintain these batteries and that Dealer recommends that I regularly inspect the sensors for dirt and dust build-up and test the sensors weekly to help maintain continued operation. Dealer also recommends that I carefully read and follow the owner's manual, instructions and warnings for all battery-powered devices.

18. COMMUNICATION FACILITIES. (A) AUTHORIZATION. I authorize Dealer to request on my behalf services, orders or equipment from a telephone company, wireless carrier or other company providing communication facilities, signal transmission services or facilities under this Contract (referred to as "Telephone Company"). (B) DIGITAL COMMUNICATOR. I understand that a digital communicator, if installed under this Contract, uses traditional telephone lines for sending

LINE IS CUT OR INTERRUPTED. DEALER MAY NOT BE ABLE TO DOWNLOAD SYSTEM CHANGES OR PROVIDE CERTAIN AUXILIARY MONITORING SERVICES THROUGH A NON TRADITIONAL TELEPHONE LINE OR SERVICE. MY ALARM PANEL MAY BE UNABLE TO SEIZE MY TELEPHONE LINE TO TRANSMIT AN ALARM SIGNAL IF ANOTHER CONNECTION IS OFF THE HOOK DUE TO IMPROPER CONNECTION OR OTHERWISE. DEALER RECOMMENDS THAT I TEST MY EQUIPMENT MONTHLY, EVEN THOUGH A SUCCESSFUL TEST OF MY EQUIPMENT DOES NOT GUARANTEE THAT DEALER WILL RECEIVE ALARM SIGNALS FROM MY EQUIPMENT IN THE FUTURE. DEALER WILL NOT PROVIDE FIRE OR SMOKE ALARM MONITORING OR UL CERTIFIED SYSTEMS MONITORING TO COMMERCIAL CUSTOMERS BY MEANS OTHER THAN A TRADITIONAL TELEPHONE LINE AND COMMERCIAL CUSTOMER UNDERSTANDS THAT IT IS SOLELY RESPONSIBLE FOR ASSURING THAT IT USES TRADITIONAL TELEPHONE SERVICE FOR ANY SUCH MONITORING. COMMERCIAL CUSTOMER ACKNOWLEDGES THAT ANY DECISION TO USE NON-TRADITIONAL TELEPHONE SERVICE AS THE METHOD FOR TRANSMITTING ALARM SIGNALS IS BASED ON COMMERCIAL CUSTOMER'S OWN INDEPENDENT BUSINESS JUDGMENT AND THAT ANY SUCH DECISION IS MADE WITHOUT ANY ASSISTANCE, INVOLVEMENT, INPUT, RECOMMENDATION OR ENDORSEMENT ON THE PART OF DEALER. COMMERCIAL CUSTOMER ASSUMES SOLE AND COMPLETE RESPONSIBILITY FOR ESTABLISHING AND MAINTAINING ACCESS TO AND USE OF THE NON-TRADITIONAL TELEPHONE SERVICE FOR CONNECTION TO THE ALARM MONITORING EQUIPMENT AND FOR ANY LIABILITY ASSOCIATED WITH THE USE OF THE NON-TRADITIONAL TELEPHONE SERVICE.

19. CANCELLATION. I understand that Dealer may, at any time, cancel this Contract at its option if: (A) Dealer's alarm monitoring center is destroyed or damaged so that it is impractical for Dealer to continue Service; (B) Dealer cannot acquire or retain the transmission connections or authorization to transmit signals between my premises and its alarm monitoring center, or the fire or police department or other agency, or between Dealer's alarm monitoring center and the fire or police department or other agency; (C) I fail to follow Dealer's recommendations to repair or replace any defective parts of the Equipment not covered under the Limited Warranty or QSP, if purchased; (D) I fail to follow the operating instructions for the Equipment or monitoring; or (E) Dealer determines in its absolute and sole discretion that it is impractical to continue Service due to the modification or alteration of my premises after installation. If Dealer cancels for any of the reasons stated immediately above, Dealer will refund any advance payments made for services to be supplied after the date of such termination, less any amounts still due for the installation of the Equipment, for Services already rendered, and any other charges due, but Dealer will not be liable for damages or subject to a contract termination charge as a result of such termination. Dealer may cancel this Contract with or without notice at its option if: (A) I fail to pay any monies when due under this Contract; (B) I fail to comply with or breach any other term or condition of this Contract; (C) I fail to maintain my premises in a safe and sanitary condition; or (D) I change to a telephone/communications service incompatible with alarm signal transmission. If Dealer cancels for any of the reasons stated immediately above, Dealer will not be liable for damages or subject to penalty as a result of such termination. In the event of a default and/or termination of the Contract, Dealer has the right under this Contract to reprogram or disconnect my Equipment so that it no longer communicates with the central station, without notice to Me. In the event that Dealer must make a service call to the Monitored Location to terminate the transmission of signals to its central station, I shall pay $50 to Dealer as a disconnect fee. In the event I do not permit Dealer to reprogram or disconnect the Equipment so that it no longer communicates with its central station, I will be responsible for the Total Monthly Service Charge under the Contract as long as the Equipment is sending signals to Dealer's central station.

20. ASSIGNMENT. I UNDERSTAND THAT THIS CONTRACT IS NOT ASSIGNABLE BY ME EXCEPT UPON THE PRIOR WRITTEN CONSENT OF DEALER, AND THAT ANY ASSIGNMENT BY ME WITHOUT THE PRIOR WRITTEN CONSENT OF DEALER SHALL BE VOID AND OF NO EFFECT. DEALER SHALL HAVE THE RIGHT TO ASSIGN THIS CONTRACT TO ANY OTHER PERSON, FIRM OR CORPORATION OR ITS AFFILIATES, WITHOUT NOTICE TO ME. DEALER SHALL HAVE THE FURTHER RIGHT TO SUBCONTRACT ANY INSTALLATION AND/OR SERVICES, WITHOUT NOTICE TO ME, INCLUDING BUT NOT LIMITED TO, MONITORING SERVICES AND/OR LIMITED WARRANTY/EXTENDED LIMITED WARRANTY (QSP) SERVICES THAT DEALER MAY PERFORM. I ACKNOWLEDGE AND AGREE THAT THIS CONTRACT AND PARTICULARLY THOSE PARAGRAPHS RELATING TO DEALER'S LIMITED LIABILITY, DISCLAIMER OF WARRANTIES AND THIRD-PARTY INDEMNIFICATION INURE TO THE BENEFIT OF, AND ARE APPLICABLE TO, ANY OF ITS ASSIGNEE(S) AND/OR SUBCONTRACTORS, WITH THE SAME FORCE AND EFFECT AS THEY APPLY TO DEALER. I FURTHER ACKNOWLEDGE AND AGREE THAT AN ASSIGNEE(S) OF THIS CONTRACT SHALL NOT BE RESPONSIBLE FOR CLAIMS, LIABILITIES OR DAMAGES THAT ACCRUED PRIOR TO THE DATE OF SUCH ASSIGNMENT AND ARE HEREBY RELEASED FROM SAME. AS IS SET FORTH ON PAGE 1, ANY REFERENCES TO DEALER HEREIN SHALL BE INTERPRETED TO INCLUDE REFERENCES TO ITS ASSIGNEE(S), WHETHER OR NOT A SPECIFIC REFERENCE IS MADE TO ASSIGNEE(S).

21. DELAYS. I AGREE THAT DEALER HAS NO RESPONSIBILITY OR LIABILITY TO ME OR ANY OTHER PERSON FOR DELAYS IN THE INSTALLATION OR REPAIR OF THE EQUIPMENT REGARDLESS OF THE REASON. I AGREE THAT DEALER HAS NO RESPONSIBILITY OR LIABILITY FOR INTERRUPTIONS OF SERVICE OR ANY RESULTING CONSEQUENCES, WHETHER DUE TO STRIKE, RIOT, FLOOD, FIRE, TERRORISM, ACT OF GOD OR ANY OTHER CAUSE WITHIN OR BEYOND DEALER'S CONTROL. IF THERE ARE SERVICE INTERRUPTIONS, DEALER HAS NO OBLIGATION TO SUPPLY ME WITH SUBSTITUTE SERVICES.

22. ELECTRONIC MEDIA; PERSONAL INFORMATION. I agree that Dealer may scan, image or otherwise convert this Contract into an electronic format of any nature and may destroy the paper copy of this Contract. I also agree that a copy of this Contract produced from such electronic format is legally equivalent to the original for any and all purposes, including litigation. Likewise, I agree that Dealer's receipt by fax of the Contract signed by Me legally binds Me and such fax copy or electronic copy is legally equivalent to the original for any and all purposes, including litigation. I confirm that the personal information about Me and third parties that I provided to Dealer is true and complete and that I shall notify Dealer without delay in writing of any change to this information. I consent to Dealer's use of my personal information and that of third parties that I provided to Dealer for the purpose of monitoring, setting up and administering my security services (including credit approval, invoicing, collection and to provide Me with information on new services or equipment). I have obtained the consent of, or hereby consent to, the third parties whose personal information I provided to Dealer to use such personal information for the administration of my account with Dealer and as provided in this Contract. I consent and agree that Dealer may collect (including this consent to record my telephone conversations with Dealer's representatives), use, disclose and transfer my personal information and that of third parties provided by Me to Dealer, Dealer's parents, affiliates, subsidiaries, successor entities, subcontractors or assignees of this Contract or any applicable authority having jurisdiction that requests such information to administer alarm monitoring services or alarm system license, permit or similar programs.

23. MEDICAL. I understand and accept that Dealer specifically disclaims any responsibility for Services associated with the notification or dispatching of paramedics, doctors and other medical personnel and/or ambulance services and if there are any charges incurred as a result of said notification, said charges shall be my responsibility, whether requested or not and whether such entities were correctly or incorrectly notified, and agree to indemnify Dealer regarding such charges.

24. TESTING. I agree that it is my responsibility to test the Equipment monthly by calling 1-800-369-0996 (and following the prompts).

25. THIRD-PARTY INSTALLATIONS. In the event the equipment at my premises was not installed by Dealer, or its subcontractor, I understand that Dealer makes no warranty or representation that the equipment will function properly and Dealer reserves the right to terminate the obligations under this Contract at any time with written notice to Me. I acknowledge that if the equipment was installed by a third party, that the relationship between Dealer and such third party is that of principal and independent contractor, and not of employer and employee or Dealer and agent.

26. NOTICES AND GENERAL LEGAL MATTERS. (A) Unless otherwise provided in this Contract all notices under this Contract are to be dated, in writing, and are to be sent by US Mail, postage prepaid, addressed to Dealer or Me at the address shown on the front of this Contract. If this Contract has been accepted by ADT, then I shall provide any such notice to ADT by providing written notice as provided herein and contacting ADT at 800-662-5378. We will notify each other in writing of any change of address for the purpose of giving notice under this Contract. Notices are effective five (5) days after the date sent. (B) If a court determines that any provision of this Contract is invalid or unenforceable, that provision(s) shall be deemed amended and enforced to the maximum permitted by state law; however, each and every other provision of this Contract shall continue to be valid and enforceable. (C) The accompanying Emergency Information Schedule, Schedule of Protection and any applicable riders or addendums are incorporated into and made part of this Contract.

27. INSPECTION SERVICE. Where Inspection Service is provided under this Contract, Dealer will perform periodic inspections of the Equipment in the manner and frequency indicated on the front page of this Contract. I authorize Dealer to make any repairs necessitated by damaged or malfunctioning Equipment noted during such an inspection. I further agree to pay Dealer for Service and Equipment charges in connection with those repairs at the then-current rates charged by Dealer unless I purchased QSP under the terms listed in this Contract and such repairs are covered by QSP, in which case the service charges will be as set forth in Paragraph 10. Extended Limited Warranty/Quality Service Plan (QSP).

28. INVESTIGATOR RESPONSE SERVICE. Where Investigator Response Service is provided under this Contract, Dealer has entered into a separate agreement with an Investigator Response Service to provide investigator response at my option. Neither Dealer nor the Investigator Response Service will be liable for Dealer's or the Investigator Response Service's failure to perform hereunder due to acts of God, fire, strikes, work stoppages, differences with workmen, restrictions imposed by government agencies, war, terrorism, riot or any cause outside of Dealer's or the Investigator Response Service's control as the case may be. Investigator Response Service may be terminated or substituted at any time at Dealer's option.

29. ENTIRE CONTRACT. THIS CONTRACT AND THE ACCOMPANYING SCHEDULE OF PROTECTION AND EMERGENCY INFORMATION SCHEDULE CONSTITUTE THE ENTIRE CONTRACT BETWEEN DEALER AND ME. THE TERMS AND CONDITIONS OF THIS CONTRACT APPLY AS PRINTED WITHOUT ALTERATION OR QUALIFICATION, UNLESS A CHANGE IS APPROVED IN A SIGNED WRITING BY DEALER'S AUTHORIZED REPRESENTATIVE. THE TERMS AND CONDITIONS OF THIS CONTRACT SHALL GOVERN EVEN IF I SUBMITTED A PURCHASE ORDER OR OTHER DOCUMENT WITH INCONSISTENT OR ADDITIONAL TERMS AND CONDITIONS. ANY ORAL REPRESENTATIONS MADE BY DEALER, ITS ASSIGNS OR THEIR AGENTS ARE MERGED INTO THIS AGREEMENT AND SHALL BE OF NO FORCE OR EFFECT.

30. PRIVACY POLICY. Dealer will make its privacy policy available to Me. IF ADT ACCEPTS THIS CONTRACT, I UNDERSTAND THAT ADT MAINTAINS AN ONLINE PRIVACY POLICY AT WWW.ADT.COM/PRIVACY THAT IS APPLICABLE TO THE TERMS, CONDITIONS AND OBLIGATIONS OF THE PARTIES TO THIS



# Emergency Information Schedule
## (All Applicable Information is Required)

PRINT CLEARLY IN CAPITAL LETTERS

1 2 3 A B C

Account Type: ☐ Install ☐ Takeover ☐ System Move

Monitor Account Number:

☐ Commercial ☐ Residential ☐ Dealer ☐ Contract Monitor

Equipment Type:         Confirmation Code:

**Customer's Name:**
Last Name:     First Name:     MI:     SSN:

Business Name:     Affinity Name: _____

Site Address:     Beacon Score:     Prewire: ☐ Yes ☐ No

City/Township:     County/Borough:     State:   Zip Code:

Map Page:     Cross Street:

Time Zone: ☐ E   ☐ C   ☐ M   ☐ P

Billing Address:     Attention (Comm. Only):

City:     State:   Zip Code:

## REQUIRED - EMERGENCY INFORMATION

Permit Number:

Police Department Name:     Phone Number:     Fire Department Name:     Phone Number:

Medical/Ambulance Name:     Phone Number:     Guard/Patrol Name:     Phone Number:

MONITORED LOCATION TELEPHONE
Number 1:     Number 2:

A Personal Identification Code (PIC) must be issued to all users of the alarm including all people listed in the Key Holder section. A PIC must be no more than 10 characters in length, and may not contain any punctuation or spaces, offensive language, or non-standard spelling.

PIC

## REQUIRED - KEY HOLDER/RESPONSIBLE PARTIES

In the event of an alarm, list in order of preference those individuals who should be called. Those listed may need to meet the authorities in response to an alarm signal, so they need to have access to the monitored location, a Personal Identification Code (PIC), and a code to turn the alarm system on and off. Check the Yes box under Emergency Call Verification (ECV) to indicate which individuals should be called prior to notification of authorities. At least one individual must be selected. These individuals are authorized by you to CANCEL the alarm. These individuals must be issued the PIC established on the account.

| | Last Name: | First Name: | ECV | Phone Number: | | |
|---|---|---|---|---|---|---|
| 1 | | | ☒ Yes ☐ No | | ☐ Home | ☐ Mobile/Cell ☐ Work |
| 2 | Last Name: | First Name: | ☐ Yes ☐ No | Phone Number: | ☐ Home | ☐ Mobile/Cell ☐ Work |
| 3 | Last Name: | First Name: | ☐ Yes ☐ No | Phone Number: | ☐ Home | ☐ Mobile/Cell ☐ Work |
| 4 | Last Name: | First Name: | ☐ Yes ☐ No | Phone Number: | ☐ Home | ☐ Mobile/Cell ☐ Work |
| 5 | Last Name: | First Name: | ☐ Yes ☐ No | Phone Number: | ☐ Home | ☐ Mobile/Cell ☐ Work |

## Services

| Service | MONTHLY RATE: | Service | MONTHLY RATE: |
|---|---|---|---|
| ☐ Basic Burglary Service | $ | ☐ DSC Sky Route | $ |
| ☐ Basic Burglary Service with Extended Limited Warranty with $25 Trip Fee (Residential Only) | $ | ☐ Alarm Net C Backup | $ |
| | | ☐ Guard Response | $ |
| ☐ Key Fob/Smoke/Carbon Monoxide | $ | ☐ Other_____ | $ |
| ☐ Two Way Voice | $ | ☐ Other_____ | $ |

BILLING FREQUENCY:
FOR ALL CHARGES
☐ Monthly
☐ Quarterly
☐ Semi-Annually
☐ Annually

PURCHASE AMOUNT TOTAL
$

TOTAL MONTHLY RATE
$

## Electronic Payment Options

Name as it appears on your bank account or credit card

Name of Bank/Credit Union

# Emergency Information Schedule
## (All Applicable Information is Required)

**AUTHORIZED DEALER**

PRINT CLEARLY IN CAPITAL LETTERS

`1 2 3 A B C`

Account Type: ☐ Install ☐ Takeover ☐ System Move

Monitor Account Number: ☐ Commercial ☐ Residential ☐ Dealer ☐ Contract Monitor

Equipment Type: Confirmation Code:

**Customer's Name:**

Last Name: First Name: MI: SSN:

Business Name:

Affinity Name: _____

Site Address: Beacon Score: Prewire: ☐ Yes ☐ No

City/Township: County/Borough: State: Zip Code:

Map Page: Cross Street:

Time Zone: ☐ E ☐ C ☐ M ☐ P

Billing Address: Attention (Comm. Only):

City: State: Zip Code:

## REQUIRED - EMERGENCY INFORMATION

Permit Number:

Police Department Name: Phone Number: Fire Department Name: Phone Number:

Medical/Ambulance Name: Phone Number: Guard/Patrol Name: Phone Number:

**MONITORED LOCATION TELEPHONE**
Number 1: Number 2:

A Personal Identification Code (PIC) must be issued to all users of the alarm including all people listed in the Key Holder section. A PIC must be no more than 10 characters in length, and may not contain any punctuation or spaces, offensive language, or non-standard spelling.

PIC

## REQUIRED - KEY HOLDER/RESPONSIBLE PARTIES

In the event of an alarm, list in order of preference those individuals who should be called. Those listed may need to meet the authorities in response to an alarm signal, so they need to have access to the monitored location, a Personal Identification Code (PIC), and a code to turn the alarm system on and off. Check the Yes box under Emergency Call Verification (ECV) to indicate which individuals should be called prior to notification of authorities. At least one individual must be selected. These individuals are authorized by you to CANCEL the alarm. These individuals must be issued the PIC established on the account.

1 Last Name: First Name: ECV ☒ Yes ☐ No Phone Number: ☐ Home ☐ Mobile/Cell ☐ Work

2 Last Name: First Name: ECV ☐ Yes ☐ No Phone Number: ☐ Home ☐ Mobile/Cell ☐ Work

3 Last Name: First Name: ECV ☐ Yes ☐ No Phone Number: ☐ Home ☐ Mobile/Cell ☐ Work

4 Last Name: First Name: ECV ☐ Yes ☐ No Phone Number: ☐ Home ☐ Mobile/Cell ☐ Work

5 Last Name: First Name: ECV ☐ Yes ☐ No Phone Number: ☐ Home ☐ Mobile/Cell ☐ Work

## Services

| | MONTHLY RATE: | | | MONTHLY RATE: | | |
|---|---|---|---|---|---|---|
| ☐ Basic Burglary Service | $ | | ☐ DSC Sky Route | $ | | |
| ☐ Basic Burglary Service with Extended Limited Warranty with $25 Trip Fee (Residential Only) | $ | | ☐ Alarm Net C Backup | $ | | PURCHASE AMOUNT TOTAL $ |
| | | | ☐ Guard Response | $ | | |
| ☐ Key Fob/Smoke/Carbon Monoxide | $ | | ☐ Other_____ | $ | | |
| ☐ Two Way Voice | $ | | ☐ Other_____ | $ | | TOTAL MONTHLY RATE $ |

BILLING FREQUENCY:
FOR ALL CHARGES
☐ Monthly
☐ Quarterly
☐ Semi-Annually
☐ Annually

## Electronic Payment Options

Name as it appears on your bank account or credit card

Name of Bank/Credit Union:

## Terms & Conditions

The charge to your account for your first billing will be larger than it will be for any future billing, due to the partial first month of service. For the first billing, ADT will be charging your account for a complete billing period, whether that is for one month, one quarter, six months or one year, depending on the billing frequency you selected. In addition, we will be charging your account for the portion of your first month for which you received monitoring service. For example, if your alarm system was installed on September 16th, and you selected monthly billing, and your monthly service rate is $30.00, then your first statement would look similar to this:

| | |
|---|---|
| Partial month security service from 9/16/00 to 9/30/00 | $15.00 |
| Security service from 10/1/00 to 10/31/00 | $30.00 |
| Sales taxes (if applicable) | $ 2.10 |
| Automatic Payment - Thank You | $47.10 |

**\*\*THE INITIAL CHARGE WILL BE MADE THE DAY AFTER YOUR MONITORING SERVICE IS INITIATED. \*\*** All future charges for bank account withdrawals will be made as close as possible to your preferred payment date.

The charge to your account would be your balance of $47.10. All future charges to your account in this monthly billing example would be $30.00 plus sales taxes (if applicable).

A reminder: Your account charge applies only to your monitoring and recurring extended limited warranty charges. Once the automatic charge begins on your account, ADT will no longer send you statements unless you have had a service call for equipment in your home.

You will be responsible for remitting by check, any charges not honored by your bank or credit card company, plus a service fee. ADT will continue to charge your account, but if a second deduction is not honored or, declined, ADT has the right to discontinue this payment plan without notice. If you change banks, account numbers, or credit card numbers, it is your responsibility to notify ADT immediately.

If you need to change your bank account or credit card information, please contact our Customer Service Department at 1-800-722-6779.

**IMPORTANT NOTICE:** In the event you elect to cancel your participation in the Automatic Payment Plan after the Initial Term of this agreement, you will lose the $1.00 per month discount offered to customers who pay by the Automatic Payment Plan.



| SCHEDULE OF PROTECTION | The ADT Authorized Dealer Program is an ADT LLC dba ADT Security Services ("ADT") approved Program of independent ADT Authorized Dealers. Please refer any questions concerning the Program or Dealer to ADT at 800-539-9690. | Monitoring Account Number: Dealer Name: Protect Your Home Dealer Number: |

THIS CONTRACT is made and entered into this _____ day of _____, 20_____ by and between Dealer ("We" "Us" or "Our") and _____, ("You" or "Your"),

_____ ("Monitored Location") _____ _____
Street & Number, State, Zip Code · Home Telephone · Business Telephone

This Schedule of Protection is incorporated by reference into the Alarm Services Contract made this date between We, the Dealer and You, the terms and conditions of which fully apply to this Schedule of Protection.

☐ RESIDENTIAL ☐ COMMERCIAL ☐ WIRELESS ☐ APARTMENT

| CODE | QUANTITY | DESCRIPTION | PRICE | EXTENDED PRICE |
|------|----------|-------------|-------|----------------|
| | | Base System ($850 Value) - SELECT ONLY ONE OF THE FOLLOWING: | | |
| | | ☐ Impassa Base *(1 Key, 2 D/W, 1 Motion)* ☐ Impassa Takeover *(1 Keyfob only)* ☐ Power Series *(1864 Panel, 1 Keypad, 1 Keyfob)* | $___99.00 | |
| D019PS | | P.S. (Choose one) ☐ WIRELESS DOOR/WINDOW ☐ KEY FOB ☐ EMER PENDANT | $49 | |
| D044SP | | ☐ SHOCK DETECTOR | $79 | |
| D054PK | | ☐ WIRELESS 2-WAY KEY CHAIN | $99 | |
| **ITEMS SWAPPED** | | _____Keychain Remote _____Door/Window _____Motion Detector | | |
| | **Additional Protection Devices** | | | |
| D143HTP | | Hardwire Touchpad (Power Series) | $199 ea. | |
| D192WKP | | Wireless 2-Way Keypad (Impassa) | $249 ea. | |
| D165CO | | Wireless Carbon Monoxide Detector | $229 ea. | |
| D049CB | | Cellular Unit **3G 2075 GS2055 GS3060** *(circle one)* | $149 ea. | |
| D199PU | | Pulse Upgrade | $199 ea. | |
| D094DW | | Wireless Door/Window Sensor _____Doors _____Windows | $129 ea. | |
| D209OS | | Wireless Exterior Siren with Temp Sensor and Strobe | $289 ea. | |
| D122FD | | Wireless Flood Sensor | $169 ea. | |
| D158GB | | Wireless Glass Break Detector | $219 ea. | |
| D090KR | | Keychain Remote (w/Personal Panic) | $119 ea. | |
| D122KR-2 | | 2-Way Keychain Remote | $159 ea | |
| D108MP | | Emergency Pendant | $139 ea. | |
| D165MD | | Wireless Motion Detector | $229 ea. | |
| D122OH | | Wireless Overhead Garage Door Sensor | $159 ea. | |
| D190RK | | Repeater Kit | $219 ea. | |
| D103SD | | Wireless Shock Detector | $149 ea. | |
| D165SC | | Wireless Smoke Communicator (Monitored Photo-Electric) | $229 ea. | |
| D060PHC | | Premium Hardwire Glass Break, Motion, Smoke, Siren | $139 ea. | |
| D020HWC | | Hardwire Contact | $99 ea. | |
| D139IS | | Wireless Indoor Siren | $179 ea. | |
| D105TWV | | Power Series 2 Way Voice Module and Speaker, 2 Ports | $169 ea. | |
| D099CDV | | Vanishing Contact | $139 ea. | |
| | **Exception Items (Hardwire Contacts, Etc.)** | | | |
| D015SU | | Wireless Shock Upgrade (requires trade-in of D/W) | $24 ea. | |
| D025KU | | 2-Way Keychain Upgrade (requires trade-in of Standard Key Chain) | $40 ea. | |
| D005VCU | | Wireless Vanishing Contact Upgrade (requires trade-in of D/W) | $10 ea. | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

You acknowledge that: (a) We have explained the full range of protection, equipment, and services available to You, (b) additional protection over and above that provided herein is available and may be obtained from Us at an additional cost to you and (c) You desire and have contracted for only the equipment and services itemized on this Contract. We are not a security consultant.

| DATE | PURCHASER'S SIGNATURE | SUBTOTAL | |
|------|----------------------|----------|--|
| INSTALLATION DATE GIVEN | INSTALLATION TECHNICIAN NAME | _____% TAX | |
| DEALER LICENSE NUMBER | SALES REPRESENTATIVE NAME | TOTAL | |
| | | LESS DEPOSIT | |
| Ver 7.3.12 | **ASSIGNEE COPY** | BALANCE DUE | |



# NOTICE OF CANCELLATION

Monitoring Account No. _____

The ADT Authorized Dealer Program is an ADT LLC dba ADT Security Services ("ADT") approved Program of Independent ADT Authorized Dealers. Please refer any questions concerning the Program or the Dealer to ADT at 800-539-9690.

ENTER DATE OF TRANSACTION

I HEREBY ACKNOWLEDGE RECEIPT OF THIS NOTICE
BUYER SIGNATURE

IN ORDER TO CANCEL, BUYER MUST SIGN BELOW.

YOU MAY CANCEL THIS TRANSACTION, WITHOUT PENALTY OR OBLIGATION, WITHIN THREE BUSINESS DAYS FROM THE ABOVE DATE.

IF YOU CANCEL, ANY PROPERTY TRADED IN, ANY PAYMENTS MADE BY YOU UNDER THE AGREEMENT, AND ANY NEGOTIABLE INSTRUMENT EXECUTED BY YOU WILL BE RETURNED WITHIN TEN (10) BUSINESS DAYS FOLLOWING RECEIPT BY THE SELLER OF YOUR CANCELLATION NOTICE, AND ANY SECURITY INTEREST ARISING OUT OF THE TRANSACTION WILL BE CANCELLED.

IF YOU CANCEL, YOU MUST MAKE AVAILABLE TO THE SELLER AT YOUR RESIDENCE, IN SUBSTANTIALLY AS GOOD CONDITION, AS WHEN RECEIVED, ANY GOODS DELIVERED TO YOU UNDER THIS AGREEMENT; OR YOU MAY IF YOU WISH, COMPLY WITH THE INSTRUCTIONS OF THE SELLER REGARDING THE RETURN SHIPMENT OF THE GOODS AT THE SELLER'S EXPENSE AND RISK.

IF YOU MAKE THE GOODS AVAILABLE TO THE SELLER AND THE SELLER DOES NOT PICK THEM UP WITHIN 20 DAYS OF THE DATE OF YOUR NOTICE OF CANCELLATION, YOU MAY RETAIN OR DISPOSE OF THE GOODS WITHOUT ANY FURTHER OBLIGATION. IF YOU FAIL TO MAKE THE GOODS AVAILABLE TO THE SELLER, OR IF YOU AGREE TO RETURN THE GOODS TO THE SELLER AND FAIL TO DO SO, THEN YOU REMAIN LIABLE FOR PERFORMANCE OF ALL OBLIGATIONS UNDER THE CONTRACT.

TO CANCEL THIS TRANSACTION, MAIL OR DELIVER A SIGNED AND DATED COPY OF THIS CANCELLATION NOTICE OR ANY OTHER WRITTEN NOTICE TO:

**ADT LLC dba ADT Security Services**
**14200 E. Exposition Avenue**
**Aurora, CO 80012-2512**

**NO LATER THAN MIDNIGHT OF** _____
                                                  **(Date)**

# I HEREBY CANCEL THIS TRANSACTION

_____
**Buyer's Signature**                                    **(Date)**

| NAME | ADDRESS | |
|---|---|---|
| CITY | STATE | ZIP |
| SALES REPRESENTATIVE'S NAME | | |
| DEALER'S NAME | | |

F5007-03 (06/12)                                  ©2012 ADT LLC dba ADT Security Services. All rights reserved.

CANCELLATION COPY

PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

     I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is:  2029 Century Park East, Suite 300, Los Angeles, California 90067.

     On July 7, 2014, I served the foregoing document(s) described as: **DEFENDER SECURITY COMPANY'S THIRD PARTY COMPLAINT AGAINST PAYAM BOSTANI** on interested party(ies) below, using the following means:

Alison E. Wilson, Esq.
Payam Shahian, Esq.
**Strategic Legal Practices, APC**
awilson@slpattorney.com
phahian@slpattorney.com
*Attorneys for Plaintiff*

Matthew R. Mendelson, Esq.
**MAZIE SLATER KATZ & FREEMAN LLC**
mmendelsohn@mskf.net
*Attorney for Plaintiff*

☒ BY ELECTRONIC MAIL OR ELECTRONIC TRANSMISSION.  Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the document(s) to be sent to the respective e-mail address(es) of the party(ies) as stated above.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☒ (FEDERAL)  I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made

     Executed on July 7, 2014 at Los Angeles, California.

Andrea Augustine Johnson         */s/Andrea Augustine Johnson*
Print Name                        Signature

PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is:  2029 Century Park East, Suite 300, Los Angeles, California 90067.

On July 7, 2014, I served the foregoing document(s) described as: **EXHIBIT "1' RE DEFENDANTS NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE CROSS-COMPLAINT** on interested party(ies) below, using the following means:

Alison E. Wilson, Esq.
Payam Shahian, Esq.
**Strategic Legal Practices, APC**
awilson@slpattorney.com
phahian@slpattorney.com
*Attorneys for Plaintiff*

Matthew R. Mendelson, Esq.
**MAZIE SLATER KATZ & FREEMAN LLC**
mmendelsohn@mskf.net
*Attorney for Plaintiff*

☒BY ELECTRONIC MAIL OR ELECTRONIC TRANSMISSION.  Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the document(s) to be sent to the respective e-mail address(es) of the party(ies) as stated above.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☒ (FEDERAL)  I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made

Executed on July 7, 2014 at Los Angeles, California.

Andrea Augustine Johnson     */s/Andrea Augustine Johnson*
Print Name            Signature